**GRAFF CHEVROLET COMPANY,**
**Appellant,**

**v.**

**Ellis CAMPBELL, Jr., District Director of**
**Internal Revenue, Appellee.**

**No. 21178.**

United States Court of Appeals
Fifth Circuit.

March 29, 1965.

---

2. See Cherner v. Transitron Electronic Corp., 221 F.Supp. 48 (D.C.Mass.).

Graham R. E. Koch, Akin, Vial, Hamilton, Koch & Tubb, Dallas, Tex., for appellant.

Carolyn R. Just, Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Alex A. Pandeleon, Attys., Dept. of Justice, Washington, D. C., H. Barefoot Sanders, U. S. Atty., Dallas, Tex., for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

WISDOM, Circuit Judge:

This case presents an apparent conflict between the adjustment provisions of section 481 of the Internal Revenue Code of 1954 and the statute of limitations,[1] section 6501(a) of the Code.

---

1. In pertinent part, section 481 provides: "In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change")—(1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then (2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply * * *."

The taxpayer, Graff Chevrolet Company, is a retail automobile dealer in Grand Prairie, Texas. Graff sells automobiles under a deferred payment plan, discounting the purchasers' promissory notes to a finance company. The finance company pays part of the discount price to the taxpayer and credits the rest to a "dealer reserve account" to secure the company against non-payment of the notes. In 1956 and 1957 Graff did not report as income the amounts credited to its dealer reserve accounts. In 1959 the Supreme Court held that amounts in the dealer reserve accounts must be reported in the year of the credit, not in the year when the amounts are finally paid to the dealers. Commissioner of Internal Revenue v. Hansen, 1959, 360 U.S. 446, 79 S.Ct. 1270, 3 L.Ed. 1360. Under the Hansen decision the taxpayer should have reported in 1956 and 1957 the amounts credited to the dealer reserve accounts in those years. The Commissioner could not reopen 1956 and 1957; those years are closed by the three year statute of limitations, section 6501. The Commissioner, however, has a second string to his bow: relying on Hansen and acting under the adjustment provisions of section 481, the Commissioner required the taxpayer to change its method of accounting so as to include as income in the 1958 return the amounts credited to the dealer's reserve accounts in 1956 and 1957.

Section 481 provides that if income escapes taxation because of a change in the accounting method, the Commissioner may make an adjustment by including the omitted income in the year of the change. The taxpayer argues vigorously that section 481 does not permit the Commissioner to reopen closed years; that section 481 applies only to open years. The Commissioner insists that section 481 does apply to closed years; that the 1956 and 1957 dealer reserve income will escape taxation unless section 481 applies to income omitted in closed years.

Clearing away the underbrush, we point out certain questions that are *not* in the case. We are not concerned with the Dealer Reserve Income Adjustment Act of 1960, P.L. 86–459, 74 Stat. 124, passed to alleviate the tax burdens resulting from Hansen. Graff did not elect to be taxed under the Dealer Reserve Income Adjustment Act. Both parties agree that this case falls under section 481 covering changes in accounting methods, rather than sections 1311–1314 covering erroneous returns generally.[2]

 Section 481 applies only if there is a change in "method of accounting". Graff concedes that the change in the method of reporting dealer reserve income is a change in "method of accounting". Moreover, section 481 includes a change in accounting treatment of one item as well as a change from one whole system of accounting to another as from cash to accrual accounting. The Tax Court holds that a change in the treatment of a single item may fall under section 481.[3] The commentators agree.[4]

---

2. Sections 1311–1314 provide an alternate system for correcting the results of errors in reporting income. We do not decide the thorny question of whether section 481 overlaps sections 1311–1314. Most commentators think 481 controls in a case like the present case because 481 deals specifically with changes in accounting methods. See Barnes "Changes in Accounting Methods", (1962) Eleventh Annual Tulane Tax Institute 470, 488 & n. 83 and materials cited; Fletcher, "Section 481: Changes in Accounting Method", (1960) Eighteenth Annual N.Y.U. Institute on Federal Taxation 161, 174; Note, "Problems Arising from Changes in Tax-Accounting Methods", 73 Harv.L. Rev. 1564, 1567 (1960).

3. H.R. Ryan, 1964, 42 T.C. 386. On similar language in the 1939 Code, see Wright Contracting Co. v. Commissioner, 5 Cir. 1963. 316 F.2d 249; Commissioner v. D. Liquidating Co., 3 Cir. 1961, 292 F.2d 225.

4. See Note, "Problems Arising from Changes in Tax-Accounting Methods, 73 Harv.L.Rev. 1564, 1566–67 & n. 9; Barnes, "Changes in Accounting Methods", (1962) Eleventh Annual Tulane Tax Institute 470, 477–484; Fletcher, "Section 481: Changes in Accounting Method", (1960) Eighteenth Annual New York University Institute on Federal Taxation 160, 168–69; Graves, "What Constitutes a Change in Accounting

Legislative history,[5] and the language of section 446,[6] support the Tax Court's view.

■■ The only question before us is whether section 481 gives the Commissioner power to tax amounts that should have been reported in closed years. Nothing in the language of the section prevents its application to amounts omitted in the closed years, but nothing in the language expressly authorizes adjustments of such amounts. "[T]he legislative history of a statute", therefore, "is the most fruitful source of instruction as to its proper intrepretation". Flora v. United States, 1960, 362 U.S. 145, 151, 80 S.Ct. 630, 634, 4 L.Ed.2d 623, 627. As the Court said in a similar situation: "This is one of those cases in which Congress has seen fit not to express itself unequivocally. It has preferred to use general language and thereby requires the judiciary to apply this general language to a specific problem. To that end we must resort to whatever aids to interpretation the legislation in its entirety and its history provide." Offutt Housing Co. v. Sarpy County, 1956, 351 U.S. 253, 260, 76 S.Ct. 814, 819, 100 L.Ed. 1151, 1159. When we examine the committee reports, we find that the draftsmen described the statutory objective in unequivocal terms.

■ Since section 481 taxes in the year of the change all income omitted in prior years under the old accounting system, 481 may present the taxpayer with a staggering tax bill in the year of the change. To lighten this burden, in 1954 the Senate added the present section 481(b) (2) to the Code.[7] Section 481(b)

Practice: The Service's Changing Concept", (1958) Sixteenth Annual New York University Institute on Federal Taxation 553; Yager, "The Dilemma Under Section 481", (1958) Sixteenth Annual New York University Institute on Federal Taxation 565, 571–572.

5. The House Committee Report states that the evil section 481 was designed to cure involved "taxpayers who request permission to change their method of accounting * * * or to change the manner in which they compute significant items such as inventories * * *." H. R. No. 1337, 83rd Cong., 2d Sess. 1954, in 3 U.S.Code Congressional and Administrative News, 83rd Cong. 2d Sess.1954 at pages 4075–4076. A dealer reserve account is certainly a "significant item". The Senate Report states that section 481 will apply to "inventories, accounts receivable, and accounts payable", but "should not be limited to those categories". Sen. Rep. to accompany H.R. No. 8300, 83rd Cong., 2d Sess. 1954, in 3 U.S.Code Congressional and Administrative News, 83rd Cong., 2d Sess.1954 at page 4947. The present case involves the application of 481 to one of the taxpayer's "accounts receivable". See also Sen. Rep. 1622, 83rd Cong., 1st Sess. 1953 at 300: "It [a change in accounting method] also includes a change in the treatment of a material item * * *." The Treasury Regulation adopts this language. See Reg. sec. 1.481–1(a) (1).

6. Section 481 applies to any change in "method of accounting". Section 446(c), the introduction to the sections of the I.R.C. on methods of accounting, defines "methods of accounting" broadly enough to include a change in a single significant item. It includes changes from one "accrual method" to another, and changes in hybrid methods. See Note, "Problems Arising From Changes in Tax-Accounting Methods", 73 Harv.L.Rev. 1564, 1566–67 & n. 9 (1960). The language of the Committee Reports, quoted above, should clear up any doubt about the intent of the Congress.

7. Section 481(b) (2) as amended now provides: "If (A) the increase in taxable income for the year of the change which results solely by reason of the adjustments required by subsection (a) (2) * * * exceeds $3,000, and (B) the taxpayer establishes his taxable income (under the new method of accounting) for one or more taxable years consecutively preceding the taxable year of the change for which the taxpayer in computing taxable income used the method of accounting from which the change is made, then the tax under this chapter attributable to such increase in taxable income shall not be greater than the net increase in the taxes under this chapter * * * which would result if the adjustments required by subsection (a) (2) * * * were allocated to the taxable year or years * * * to which they are properly allocable under the new method of accounting * * *."

(2) is essentially a spreadback provision. It allows the taxpayer to spread the omitted income back over the years in which he would have reported it under the new system. He then computes the additional tax he would have paid in those years under the new system. This amount is a ceiling on the tax increase resulting from section 481. The Senate Committee that drafted this subsection expressly stated that the spreadback includes *closed years,* i. e., years barred by the statute of limitations: "If any taxable year involved in a computation under this paragraph is a *closed year* the increase or decrease in tax shall be based upon the tax previously determined for that year in accordance with section 1314(a)." (Emphasis supplied.) See Senate Report to Accompany H.R. 8300, 83rd Cong., 2d Sess., 1954, in 3 U.S.Code & Administrative News, 83rd Cong., 2d Sess., 1954, at page 4948. According to the Senate Committee, section 1314 provides the method of computing the tax if the spreadback involves closed years. The spreadback covers precisely the same years as the basic provision of section 481. If the remedial spreadback of section 481(b) (2) includes closed years, then evidently the basic provision of section 481 also applies to amounts omitted in the closed years.

■ There is no necessary conflict between section 481 and the statute of limitations. Until the year of the accounting change, the Commissioner has no claim against the taxpayer for amounts which the taxpayer should have reported in prior years. The statute of limitations is directed toward stale claims. Section 481 deals with claims which do not even arise until the year of the accounting change. "When a taxpayer uses an accounting method which reflects an expense before it is proper to do so or which defers an item of income that should be reported currently, he has not succeeded (and does not purport to have succeeded) in permanently avoiding the reporting of any income; he has impliedly promised to report that income at a later date, when his accounting method, improper though it may be, would require it. Section 481, therefore, does not hold the taxpayer to any income which he has any reason to believe he has avoided, and does not frustrate the policy that men should be able, after a certain time, to be confident that past wrongs are set at rest." Note, Problems Arising from Changes in Tax-Accounting Methods, 73 Harv.L.Rev. 1564, 1576 (1960).

■ Section 481 is designed to prevent a distortion of taxable income and a windfall to the taxpayer stemming from a change in accounting at a time when the statute of limitations bars reopening the taxpayer's returns for earlier years. It authorizes "necessary" adjustments, "to prevent amounts from being duplicated or omitted", in the "year of change" whether "initiated" by the taxpayer or the Commissioner.

The Commissioner has ample power to change accounting methods and reassess income for open years; section 481 would be virtually useless if it did not affect closed years.[8] Considering the object of the section and its legislative history, we hold that a function of section 481 is to make the very type of adjustments in the year of change, here in issue, in order to prevent income from escaping tax "solely by reason of the change".

The judgment is affirmed.

---

8. Dakin, "The Change from Cash to Accrual Accounting for Federal Income Tax Purposes", 51 Nw.U.L.Rev. 515, 523 (1956). Dakin states: "There is nothing to indicate that the 'establishment of taxable income from one or more years' is to stop with the years still open; nor should it in view of the fact that such establishment of income on an accrual basis for the prior years may diminish but does not eliminate the adjustment required in the 'year of change'." Ibid. See generally Note, "Problems Arising from Changes in Tax-Accounting Methods", 73 Harv.L.Rev. 1564–1576–78 (1960).