**AMERICAN BODY AND EQUIPMENT COMPANY**

v.

**UNITED STATES of America.**

No. CA 3–6074–C.

United States District Court, N. D. Texas, Dallas Division.

March 15, 1974.

Peter Winstead, Winstead, McGuire, Sechrest & Trimble, Dallas, Tex., for plaintiff.

Frank D. McCown, U. S. Atty., Martha Joe Stroud, Asst. U. S. Atty., Dallas, Tex., Howard A. Weinberger, Atty., Tax Div., Dept. of Justice, Dallas, Tex., for defendant.

## OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

Plaintiff has brought this suit for refund of federal income taxes allegedly erroneously or illegally assessed and collected for the fiscal year ending August 31, 1968, under Title 28, U.S.C., § 1346(a)(1). Venue is proper in this forum under Title 28, U.S.C., § 1402(a)(2). The Court finds that Plaintiff has satisfied all jurisdictional prerequisites to the filing of its complaint.

Plaintiff is asking for the sum of $3,302.84 which it contends was improperly disallowed as a deduction under Section 264 of the Internal Revenue Code of 1954, Title 26, U.S.C., § 264.

Plaintiff corporation was formed as American Body and Equipment Manufacturing Company in 1965. On July 5, 1963, it bought the stock of an older corporation that carried Plaintiff's present name. Most of the purchase price was secured by notes due over a ten year period. The sellers of the old corporation required the new corportion to take out an insurance policy on the life of its president and owner, Mr. F. Edward Clay. The reason for this was that the notes were to be paid out of the future earnings of Plaintiff and future earnings would depend heavily on the presence and ability of Mr. Clay. The sellers wanted to be sure that the notes would be paid off if Mr. Clay were to die.

A life insurance policy covering Mr. Clay was purchased and subsequently Plaintiff liquidated the old corporation subsidiary that it had bought and assumed its name.

The parties agree and the Court agrees that there is really only one question to be resolved in this action. Section 264 of the Internal Revenue Code of 1954, in part, disallows deductions for interst paid on borrowings against life insurance policies where the policy was bought pursuant to a plan of systematic direct or indirect borrowings of part or all of the increases of the cash surrender value of the policy. Section 264 also has four exceptions to this general rule, one of which is pertinent. It allows deductions for interest paid "if such indebtedness was incurred in connection with (the taxpayer's) trade or business." Our one question is whether taxpayer has paid interest on the insurance policy owned by it covering Mr. Clay's life in connection with its trade or business. The Court is of the opinion that it has not.

The policy which Plaintiff purchased was in the face amount of $308,000.00. This amount was much more than the purchase price of the old corporation, but Plaintiff had assumed many other debts for a total indebtedness in excess of $308,000.00. The policy is not a term policy for the period of the life of the notes, but a whole life policy. The premium for each of the first five years of the policy was $26,000.00 and was $4,260.00 thereafter for the life of the insured. The first year of the policy, because of the loans taken out against the cash surrender value, the maximum insurance protection was $286,400.00. This slid downward till at the end of the first five years, it stood at $200,000.00, at which level it remained. Plaintiff and the insurance company have always issued separate checks for the premiums, dividends, interest and loans.

Plaintiff has always mingled the monies borrowed on the policy with its general revenues and never has kept a separate accounting of them. It intends to keep the policy in force, knowing the maximum amount and keeping the actual maximum liability at the $200,000.-00 level for an indefinite period of time of course, therefore, in excess of the ten year life of the original purchase notes.

The case before the Court is the first opportunity that the courts have had to construe the trade or business exception to Section 264.

The Court is of the opinion that this transaction is without substance in relationship to Section 264 under Gregory v. Helvering[1] and Knetsch v. United States.[2]

Plaintiff was under an obligation to provide insurance on Mr. Clay's life in the amount for the life of the purchase notes. But it was not required to buy any particular form of policy. A decreasing term policy covering the debt would have satisfactorily met the contractual obligation. The question then is why the purchase of the policy which has such large initial premiums and cash surrender value?

Set out as Appendix "A" to this opinion is the substance of an exhibit entered into evidence by Plaintiff.[3] It shows the statistics of the policy bought by Plaintiff over a ten year period.

It does not take much perusal of Appendix "A" to see that the $26,000.00 premium is an in and out proposition. The Supreme Court said in the *Gregory* case that the substance and not the form of transactions will be looked at. In this case, the substance is that these in and out payments would allow Plaintiff to take the tax credits listed in Appendix "A". Plaintiff has admitted as much. That is why Plaintiff bought such an unusual insurance policy.

So we are back to our question of "incurred in connection with (its) trade or business."

As this is a case of first impression, the Congressional history of this exception is quite important. Both the House and Senate Reports relating to the 1964 amendment which brought about our presently disputed general rule and exception[4] have the same essential language. They say that the indebtedness must be for actual business obligations, not to finance the insurance. The example given in both is that of the financing of the expansion of inventories or other similar business needs.

In view of the facts of our case, it is not necessary to infer that a taxpayer must show a tying of the indebtedness to a major financial undertaking. But the example given does show that the intent of Congress was to allow taxpayers to take their interest deduction where there was a substantial business purpose.

At this point, *Knetsch* becomes relevant.[5] The Supreme Court found that the indebtedness in that instance was also an in and out matter as in our case. The Court said that this transaction was a sham and that in substance no debt arose which would support the deduction. The only real consequence of the transaction was a deduction. The Court found that what had been done was not what the statute intended.

In our case, insurance coverage was obtained but the indebtedness was not real, that which was paid in was simultaneously paid out. Plaintiff paid the insurance company for two separate things, an insurance policy and the opportunity to take a tax deduction. In substance, the two transactions are separate and the indebtedness-tax deduction must stand by itself. Under the reasoning of *Knetsch,* it cannot stand by itself without abusing the purpose of the statute.

The Congress intended that a deduction be allowed for interest paid on a real economic debt. It did not intend that its only economic reality be a tax deduction. Tax avoidance is a permissi-

---

1. 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935).

2. 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960).

3. The exhibit itself has several handwritten scribblings on it which are non-germane and detract from its readability.

4. 1964 U.S.Code, Congressional & Administrative News, pp. 1369 & 1750.

5. The facts of *Knetsch* are too involved and detailed to warrant setting out in this opinion in detail.

ble business purpose. But there must be economic substance to the underlying transaction to support the deduction.

The Government is requested to submit a proposed form of judgment to the Court with a copy to Plaintiff.

APPENDIX A
MODIFIED FIVE

FACE AMOUNT: $308,000                                            200 Units

Annual Premium (1–5th Policy Year)                              Age: 37
Thereafter                                                      50% Tax Bracket

| Year | Total Cash Value | * Dividend | ** Loan | Interest | Net Premium | Available From Dividend Loan | Tax Credit | Net Outlay | Net *** Insurance Estate |
|---|---|---|---|---|---|---|---|---|---|
| 1 | $ 24,600 | $3,240 | $ 24,480 | $ 1,242 | $ 888 | $ –0– | $ 621 | $1,509 | $286,400 |
| 2 | 43,200 | 3,780 | 46,980 | 2,349 | 174 | –0– | 1,174 | 1,523 | 264,800 |
| 3 | 64,800 | 4,320 | 69,120 | 3,456 | –0– | 192 | 1,728 | 1,536 | 243,200 |
| 4 | 86,400 | 4,860 | 91,260 | 4,563 | –0– | 732 | 2,282 | 1,550 | 221,600 |
| 5 | 108,000 | 5,400 | 113,400 | 5,670 | –0– | 1,272 | 2,835 | 1,563 | 200,000 |
| 6 | 111,566 | 5,400 | 113,400 | 5,670 | –0– | 1,272 | 2,835 | 1,563 | 200,000 |
| 7 | 115,190 | \\ | \\ | \\ | \\ | \\ | \\ | \\ | \\ |
| 8 | 118,870 | \\ | \\ | \\ | \\ | \\ | \\ | \\ | \\ |
| 9 | 122,602 | \\ | \\ | \\ | \\ | \\ | \\ | \\ | \\ |
| 10 | 126,384 | \\ | \\ | \\ | \\ | \\ | \\ | \\ | \\ |
| 15 | 145,938 | \\ | \\ | \\ | \\ | \\ | \\ | \\ | \\ |
| 20 | 166,218 | \\ | \\ | \\ | \\ | \\ | \\ | \\ | \\ |

  * According to Present Schedule
 ** Includes Loan from Current Years Dividend
*** Includes Post Mortem Dividend