AMERICAN BODY AND EQUIP-
MENT COMPANY, Plaintiff-Ap-
pellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 74-2756.

United States Court of Appeals,
Fifth Circuit.

April 16, 1975.

Charles G. Barnett, James A. Knox, Dallas, Tex., for plaintiff-appellant.

Frank D. McCown, U. S. Atty., Ft. Worth, Tex., Martha Joe Stroud, Asst. U. S. Atty., Dallas, Tex., Scott P. Crampton, Asst. Atty. Gen., John E. Lutz, Ernest J. Brown, Myron C. Baum, Attys., Dept. of Justice, Tax Div., Washington, D. C., Howard A. Weinberger, Tax Div., Dept. of Justice, Dallas, Tex., for defendant-appellee.

Before BELL, THORNBERRY and GEE, Circuit Judges.

BELL, Circuit Judge:

This appeal is brought from a judgment by the district court denying appellant taxpayer's claim for a $3,302.84 refund on federal income taxes assessed and collected for fiscal year ending August 31, 1968. The court rejected appellant's contention that it should have been allowed to deduct interest paid on insurance policy loans under Section 264(c)(4) of the Internal Revenue Code of 1954.[1] We affirm.

In 1963, appellant American Body and Equipment Company purchased the entire capital stock of another corporation. The purchase price was $214,000, plus the assumption by appellant of a $177,-457.94 debt owed by the acquired corporation. Appellant paid $20,000 in cash at the closing, and the remaining $194,000 was to be paid thereafter in monthly installments bearing 6 percent interest. As security for these installment notes, appellant was required to purchase $194,000 worth of insurance on the life

1. American Body and Equipment Co. v. United States, N.D.Tex., 1974, 372 F.Supp. 525.

of its president, F. Edward Clay, whose presence at the helm of appellant was thought to be essential to its future earning success. There was no such insurance requirement for the assumed debt of the acquired corporation.

Because of the assumed debt, appellant decided to purchase insurance on its president over and above that necessary to meet the requirement based on the indebtedness of $194,000. It thereupon purchased a whole life insurance policy face valued at $308,000 on Clay's life. For each of the next five years, appellant paid the annual premium on the policy, and borrowed against the policy's accrued cash value the maximum available. Appellant also received annual dividends from the insurer. The net death benefit on the policy was reduced each year by the amount of the loans, and by 1968 had been reduced to $200,000.

During fiscal year 1968, appellant paid the $26,000 annual premium, but received $5,400 in dividends and borrowed $21,600 against the policy's accrued cash value. Appellant also paid $5,670 in interest to the insurer on the $108,000 debt that it had built up over the first five years of the policy's life.

On its 1968 tax returns, appellant attempted to deduct $5,577.75 of the interest payment, relying upon IRC § 264(c)(4). Section 264(a)(3) disallows deduction for

> any amount paid or accrued on indebtedness incurred or continued to purchase or carry a life insurance endowment, or annuity contract . . . pursuant to a plan of purchase which contemplates the systematic direct or indirect borrowing of part or all of the increases in the cash value of such contract . . . . .

Section 264(c)(4) provides, however, that the above subsection shall not apply to amounts paid or accrued on indebtedness "if such indebtedness was incurred in connection with [the taxpayer's] trade or business." The IRS refused to permit appellant to deduct the interest on its insurance loan under the trade or business exception, and this refund suit followed.

After reviewing the House and Senate Reports which accompanied the 1964 amendments to § 264,[2] the district court determined that the intent of Congress with respect to the trade or business exception was to deny tax deductions for interest payments where there exists no "economic substance" to the transaction giving rise to the indebtedness. Relying heavily upon Knetsch v. United States, 1960, 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128, the court found the premium payment-cash value loan transaction between appellant and its insurer to be an "in and out proposition" creating no real economic debt. Consequently, interest paid thereon was outside the scope of the congressionally-intended statutory deduction embodied in § 264(c)(4).

Whether the interest payment herein made can be construed to fit within the § 264(c)(4) exception to that section's general rule of nondeductibility is a question of first impression at the federal appellate level. The major cases involving similar deductibility questions have all been decided with reference to the law as it existed prior to August 6, 1963, the applicability date for § 264(a)(3) and the exceptions to it found in § 264(c). In these cases, the deductibility of interest payments was determined according to the economic substance and business purpose of the un-

---

2. The trade or business exception to the general rule of nondeductibility found in § 264(a)(3) is explicated in the House and Senate Reports accompanying the Revenue Act of 1964. *See* 1964 U.S.Code Cong. & Ad.News, pp. 1369–71 (House Report); 1750–52 (Senate Report). Both Reports provide, in identical language:

> The interest deduction is not to be denied where the indebtedness actually is to finance business obligations, rather than to carry insurance. For example, an individual with an insurance policy would not have his interest deductions denied where it can be shown that the amounts borrowed by him were actually used to finance the expansion of inventory or for other similar business needs.

Id. at pp. 1371, 1752.

derlying transaction. *See e. g.,* Knetsch v. United States, *supra*; Salley v. Commissioner, 5 Cir., 1972, 464 F.2d 479; Woodson-Tenent Laboratories, Inc. v. United States, 6 Cir., 1972, 454 F.2d 637; Golsen v. Commissioner, 10 Cir., 1971, 445 F.2d 985; Campbell v. Cen-Tex, Inc., 5 Cir., 1967, 377 F.2d 688. This same approach was taken by the court below in the instant case.

Without reaching the question of the economic substance of appellant's insurance loan transaction, we affirm the district court based upon the legislative history of § 264(c)(4) as found in the House and Senate Reports accompanying the 1964 Revenue Act. *See* note 2 *supra.* On the importance of legislative history in discerning the meaning and purpose of statutory language, see Commissioner v. Bilder, 1962, 369 U.S. 499, 502–504, 82 S.Ct. 881, 8 L.Ed.2d 65, 68–69; Graff Chevrolet Co. v. Campbell, 5 Cir., 1964, 343 F.2d 568, 571. It was clearly the intent of Congress in creating the trade and business exception to § 264(a)(3) not to allow a taxpayer to deduct interest on cash value indebtedness incurred to finance the very insurance which created the cash value. The debt against cash value must be incurred for a business purpose apart from the insurance plan itself before interest paid thereon may be deductible under § 264(c)(4). Cf. Treas.Reg. § 1.264–4(d)(4).[3] Here, interest was paid on indebtedness systematically incurred for the purpose of life insurance, not for an independent business purpose. Interest paid thereon was thus not deductible.

Affirmed.

THORNBERRY, Circuit Judge (concurring):

Although the district court insisted on utilizing "economic substance" analysis found in earlier case law to decide this matter, instead of utilizing the statute which Congress enacted partially to sup-plant the earlier case law, I believe the judgment for the government is correct and therefore must be affirmed. I concur in the judgment of this court and in its opinion with respect to the facts of this appeal, but I feel it necessary to add a few remarks concerning my apprehension of what we do and do not decide for the future.

It seems to me that the appellant's real problem in this refund suit is a failure to prove its case. As the taxpayer, the appellant had the burden of proof on all material issues. Appellant relies on § 264(c)(4) of the Internal Revenue Code, the so-called "trade or business exception" to the general disallowance expressed in § 264(a)(3). Added to the Code by the 1964 Revenue Act, these provisions read together say that a taxpayer may not deduct interest on money borrowed, directly or indirectly, against a life insurance policy pursuant to a plan of systematic borrowing whose purpose is to finance the cost of insurance, i. e., the premium(s). The "exception," however, goes on to say that the interest may be deducted, if the borrowing was done "in connection with [the taxpayer's] trade or business." A close reading of the legislative history and applicable Treasury Regulations persuades me that this "exception" is not really that at all, but rather a different rule.

I suspect that what Congress and the Treasury had in mind with § 264(c)(4) was a situation in which the purpose of the borrowing is the financing of business obligations other than the purchase of life insurance. If the latter is the thing that the taxpayer has done, then I read § 264(a)(3) as saying that interest on the borrowing may not be deducted *under any label.*

The examples of "business obligations" given in the legislative history[1] and in the Regulations[2] are expansion of inventory and purchase of capital improvements. I seriously question whether

---

**3.** Under our holding, we reach the scope of the § 264(c)(4) exception only to the extent of finding it inapplicable to the facts presented.

**1.** See the citations in note 2 of Judge Bell's opinion, *supra.*

**2.** Treas.Reg. § 1.264–4(d)(4).

**650**

§ 264(c)(4), as written, may be limited so narrowly. If it were, then the Regulation might be unreasonable. For example, if I ran a business and needed cash to meet my payroll; I went to the bank and borrowed $10,000 at 10% per annum; I paid my employees; then I repaid the bank a total of $11,000; I assume that I would be entitled to deduct $10,000 under § 162 (the trade or business deduction) and $1,000 under § 163 (the interest deduction). Yet I have neither expanded my inventory nor made a capital improvement to my business.

It seems that the appellant would show the court that its activity resembled the hypothetical, only the appellant borrowed the principal amount from the insurance company instead of the bank. Its problem, however, is twofold. First, appellant failed to keep a separate accounting of how the borrowed funds were spent. Second, it failed to prove that the accumulated borrowings represented a genuine indebtedness in the sense of a factually genuine expectation of repayment on the part of the lender, the insurance company. The first failure is explicit in the trial court's findings of fact. The second is implicit in the trial court's conclusion that "the indebtedness was not real." These findings, in light of the record, are not clearly erroneous, and indeed the testimony of Mr. Clay, appellant's president whose life was insured, supports the conclusion that the "debt" was not genuine.

Under these circumstances, the appeal does not present an appropriate occasion to consider the scope of the "trade or business exception," the interpretative value of the legislative history and Regulations, or the question whether in fact appellant used the borrowed sums to finance the cost of life insurance. Before any of these issues could become germane, it was necessary that appellant present evidence of a genuine indebtedness—so that the premium thereon could constitute "interest" within the meaning of § 163 [3]—and evidence that the borrowed principal was spent in furtherance of trade or business activity other than the purchase of life insurance. Appellant did neither. The district court, despite the unclear language about shams in its opinion, found that appellant failed to meet its burden. That finding is not erroneous; therefore I concur.

3. *Cf.* Knetsch v. United States, 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960).