MEMPHIS FURNITURE MANUFAC-TURING COMPANY, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 78–2034.

United States District Court, W. D. Tennessee, W. D.

Sept. 21, 1981.

James McDonnell, Wildman, Harrold, Allen, Dixon & McDonnell, Memphis, Tenn., for plaintiff.

Jack Warren, U. S. Justice Dept. Tax Division, Washington, D.C., for defendant.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

HORTON, District Judge.

Plaintiff, a furniture manufacturer in Memphis, Tennessee, filed this civil action against the United States seeking a refund of $97,163.87 in federal income taxes plus interest thereon. Plaintiff alleges the overpayment resulted from a requirement of the Commissioner of the Internal Revenue Service requiring plaintiff to change its method of inventory valuation. According to plaintiff, the Commissioner required it to change its method of inventory valuation from the lower of cost or market value method of inventory valuation to the full cost absorption method of inventory valuation. This tax refund action was filed under the provisions of 28 U.S.C., § 1346(a).

From the inception of its business of manufacturing furniture, plaintiff has utilized the accounting method of lower of cost or market value under Internal Revenue Regulation § 1.471–4 to value its inventory of manufactured furniture. Under that accounting method, plaintiff did not recognize as income monies realized from the sale of furniture produced in a given tax year until the item of furniture was actually sold. However, plaintiff did deduct the cost of manufacturing the items of furniture in the year the furniture was actually made. Thus, furniture that had been manufactured in tax years prior to the year currently being reported would produce income which would be offset by the cost of manufacturing furniture during the current tax year, but the value of the furniture made during the current tax year would not be shown as income until the furniture was sold in future tax years. By so valuing its inventory, plaintiff was able to defer recognizing income while currently deducting expenses. The Commissioner, by virtue of Regulation § 1.471–11 which was extensive-

ly amended in 1973, directed plaintiff, beginning with the tax year 1975, to utilize the full cost absorption method of inventory valuation. This method of accounting valuation allocates the cost of manufacturing to each item of furniture as it is made and in essence parks the deduction for cost of manufacture in the warehouse with the inventory items. Therefore the plaintiff may not deduct its expenses of manufacturing an item until the tax year in which it takes the sale into income. When the plaintiff switched to the full cost absorption method, the same inventory leaped in value between midnight December 31, 1974 and 12:01 a.m., January 1, 1975 because plaintiff was forced to defer a year's worth of deductions until they would match up with the sale of the furniture held in inventory. Thus plaintiff was forced to make an adjustment of $2,024,247.19 to the value of its inventory in the tax year 1975.[1] Pursuant to Internal Revenue Regulation § 1.471–11(e)(3)(i) plaintiff elected to take this adjustment figure into income ratably over a ten year period. Therefore, plaintiff added $202,-424.72 to its net income for 1975 which resulted in an additional tax assessment of $97,163.87. Plaintiff now sues for a refund.

Plaintiff bases its demand for a refund alternatively upon three (3) grounds. First, plaintiff claims that the Commissioner has exceeded the three (3) year statute of limitation set forth in Internal Revenue Code § 6501 by virtue of the fact that the adjustment figure for the value of its inventory was computed by referring back to the tax year 1954 rather than the tax year 1972. (See footnote 1, *supra*.) Plaintiff alleges that the adjustment figure should have been computed as follows in order to comply with the three (3) year statute of limitation:

| | |
|---|---|
| Value of beginning inventory 1975 (cost absorption) | $6,982,170.79 |
| less Value of ending inventory 1974 (lower of cost/mkt) | $4,592,802.74 |
| Differential | $2,389,368.05 |
| Value of beginning inventory 1972 (cost absorption) | $4,974,831.68 |
| less Value of beginning inventory 1972 (lower of cost/mkt) | $3,278,518.11 |
| Differential | $1,696,413.57 |
| Differential 1974–75 | $2,389,368.05 |
| less Differential 1972 | $1,696,413.57 |
| Adjustment | $ 692,954.48 |

Thus, plaintiff claims its 1975 ratable share of additional income should have been only $69,295.45 and the extra tax that it should have been required to pay in 1975 should have been only $33,261.82 (48% marginal rate) instead of $97,163.87. Second, the plaintiff contends that since it has used the lower of cost or market valuation method for more than thirty years, during which time there was no objection to the method in the face of numerous audits and one large refund approved by Congress, the government should be estopped to now force a change in valuation methods and that consistency demands the same valuation method be continued. Under this theory, plaintiff demands that it be refunded the difference between the amount of tax paid due to the change in valuation and the amount of tax that would have been paid had the previous valuation method continued in use[2] and in addition demands costs and attorney's fees. Third, the plaintiff alleges that a refund is due because the forced transfer to the cost absorption method of valuation was compelled under an arbitrary and therefore invalid regulation. Plaintiff bases the invalidity of Regulation

1. This adjustment was determined by the Commissioner under Regulations § 1.471–11(e)(1)(iii) and § 1.481–3 and Internal Revenue Code § 481. The adjusted figure was established by first computing the difference in the value of the beginning inventory of 1975 under the cost absorption method and the value of the ending 1974 inventory under the lower of cost or market value method. Next the same differential was computed between the inventory valuation for 1954 as though the beginning inventory in 1954 had been computed on the cost absorption basis and subtracting from it the beginning 1954 inventory value based on the lower of cost or market value. The differential for the year 1954 was then subtracted from the differential for the year 1974–75 to arrive at the adjustment ($2,024,247.19) which the plaintiff must show as income as a consequence of the change in valuation methods.

2. Plaintiff computes this amount as follows:

| | |
|---|---|
| 1975 10% installment on increase in inventory | $202,424.72 |
| less 1975 increase in inventory using lower of cost/mkt | $116,905.45 |
| Difference (amt. of income erroneously recognized) | $ 85,519.27 |
| Times marginal tax rate of 48% | .48 |
| Amount of overpayment of tax | $ 41,049.25 |

§ 1.471–11 on the allegation that the discretion afforded the Secretary to prescribe valuation methods for inventories is bounded by two criteria: 1) that the valuation method dictated conform as nearly as possible to the best accounting practices in the trade or business involved and 2) that it be the method which most clearly reflects income. The cost absorption valuation regulation, plaintiff alleges, meets neither of these criteria and is therefore invalid. Thus plaintiff demands a refund of the difference between what it should have paid under the prior method of valuation and the ratable amount it paid due to the institution of the cost absorption method. (see footnote 2, *supra*) The defendant responded to the complaint with a general denial.

Defendant has now moved this Court for summary judgment on the issue of the validity of Regulation § 1.471.11. The Court grants the motion in part and denies it in part.

Under the subchapters of the Internal Revenue Code which deal with methods of accounting the broad general rule is that, "Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." I.R.C. § 446(a). However, section 446 embodies an exception giving the Secretary of the Treasury discretion in requiring certain methods of accounting to be used. This subsection states that, "If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income." I.R.C. § 446(b). This section has been interpreted by the courts to vest broad discretion in the Commissioner to dictate accounting methods to be utilized by taxpayers. *U. S. v. Catto*, 384 U.S. 102, 86 S.Ct. 1311, 16 L.Ed.2d 398 (1966). This broad discretion is further expanded in the tax laws by the fiat of the general rule for

accounting methods for inventories which states that:

> Whenever in the opinion of the Secretary the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

I.R.C. § 471. In September, 1973 the Commissioner of Internal Revenue promulgated Treasury Regulation § 1.471–11 which prescribes accounting methods for valuation of inventories of manufacturers.[3] The principle of full cost absorption was laid down broadly as follows:

> In order to conform as nearly as may be possible to the best accounting practices and to clearly reflect income (as required by section 471 of the Code), both direct and indirect production costs must be taken into account in the computation of inventoriable costs in accordance with the "full absorption" method of inventory costing. Under the full absorption method of inventory costing production costs must be allocated to goods produced during the taxable year or in inventory at the close of the taxable year determined in accordance with the taxpayer's method of identifying goods in inventory. Thus, the taxpayer must include as inventoriable costs all direct production costs and, to the extent provided by paragraphs (c) and (d) of this section, all indirect production costs.

Treas.Reg. § 1.471–11(a). The regulation in its various subparts then proceeds to detail the full absorption method. In subsection (e) of the regulation, the requirement of use of the full absorption method is made mandatory. In regulation § 1.471–11(e)(ii) the taxpayer so changing his method is permitted to file a Form 3115 to elect to change to this method within two years of the regulation's promulgation and thereby trigger the

---

**3.** Prior to this time manufacturers could use 1) cost or 2) lower of cost or market to value inventories.

benefits of § 1.471–11(e)(3)(iii) which gives the taxpayer the option of recognizing the amount of any adjustment to his income ratably over a ten year period. This is the election made by the plaintiff in this case. However, § 1.471–11(e)(1)(iii) declares that even though an election on a Form 3115 is made by the taxpayer, the taxpayer:

> shall be considered to have made a change in method of accounting not initiated by the taxpayer, notwithstanding the provisions of § 1.481–1(c)(5). Thus, any of the taxpayer's "pre-1954 inventory balances" with respect to such inventory shall not be taken into account as an adjustment under section 481. For purposes of this paragraph, a "pre-1954 inventory balance" is the net amount of the adjustments which would have been required if the taxpayer had made such change in his method of accounting with respect to his inventory in his first taxable year which began after December 31, 1953, and ended after August 16, 1954. See section 481(a)(2) and § 1.481–3.

Section 481 of the Internal Revenue Code deals with adjustments to be made to the taxpayer's income whenever a change in a method of accounting is instituted. This section declares that:

> (a) General rule.—In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of change")—
>
> (1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then
>
> (2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect to any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer.

I.R.C. § 481(a). Regulations promulgated by the Commissioner under this Code section state that:

> If the adjustments required by section 481(a) and § 1.481–1 are attributable to a change in method of accounting which was not initiated by the taxpayer, no portion of any adjustments which is attributable to pre-1954 Code years shall be taken into account in computing taxable income. For example, if the total adjustments in the case of a change in method of accounting which is not initiated by the taxpayer amount to $10,000, of which $4,000 is attributable to pre-1954 Code years, only $6,000 of the $10,000 total adjustments is required to be taken into account under section 481 in computing taxable income. The portion of the adjustments which is attributable to pre-1954 Code years is the net amount of the adjustments which would have been required if the taxpayer had changed his method of accounting in his first taxable year which began after December 31, 1953, and ended after August 16, 1954. See section 481(b)(4)(a).

Treas.Reg. § 1.481–3. Thus, in computing the adjustment to be made to plaintiff's income, the Commissioner determined the difference in value of the beginning 1975 inventory under full cost absorption and the prior lower of cost or market method and subtracted from this figure the amount of difference had plaintiff's 1954 inventory been valued under the full absorption method. The net figure of $2,024,247.19 was then ratably divided over ten years with an additional $202,424.72 being added to plaintiff's income for tax year 1975.

■ Defendant has moved for summary judgment as to the portions of the plaintiff's complaint which allege that the regulation which mandates usage of the full cost absorption method and prescribes an adjustment going back to 1954 is invalid. The Supreme Court has recently declared that:

> It is obvious that on their face §§ 446 and 471, with their accompanying Regulations, vest the Commissioner with wide discretion in determining whether a par-

ticular method of inventory accounting should be disallowed as not clearly reflective of income. This Court's cases confirm the breadth of this discretion. In construing § 446 and its predecessors, the Court has held that "[t]he Commissioner has broad powers in determining whether accounting methods used by a taxpayer clearly reflect income." *Commissioner of Internal Revenue v. Hansen*, 360 U.S. 446, 467, 79 S.Ct. 1270, 1282, 3 L.Ed.2d 1360 (1959). Since the Commissioner has "[m]uch latitude for discretion," his interpretation of the statute's clear-reflection standard "should not be interfered with unless clearly unlawful." *Lucas v. American Code Co.*, 280 U.S. 445, 449, 50 S.Ct. 202, 203, 74 L.Ed. 538 (1930).

*Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 99 S.Ct. 773, 781, 58 L.Ed.2d 785 (1979). The Sixth Circuit has held that, "The taxing statute relative to inventories gives broad discretion to the Commissioner to determine the proper method of valuation and also the application of the method. The burden rests on the taxpayer to prove that the Commissioner's action was arbitrary or an abuse of discretion." *Lenox Clothes Shops, Inc. v. Commissioner*, 139 F.2d 56, 58 (6th Cir. 1943). *Accord, Stokes v. Rothensies*, 61 F.Supp. 444, 449 (E.D.Pa. 1945) (Code section relative to prescribing valuation methods for inventories delegates "virtually complete discretionary authority" to the Commissioner and the taxpayer has the burden of showing his action was "plainly arbitrary or capricious."). Since section 471 expressly contemplates dependence upon regulations, it invests wide scope and validity in the administrative regulations. *Space Controls, Inc. v. Commissioner*, 322 F.2d 144, 148 (5th Cir. 1963); *Boynton v. Pedrick*, 136 F.Supp. 888, 890 (S.D.N.Y.1954), *aff'd*, 228 F.2d 745 (2d Cir. 1955) (per curiam), *cert. denied*, 351 U.S. 938, 76 S.Ct. 835, 100 L.Ed. 1465 (1956). The plaintiff-taxpayer in this case has contended that Treasury Regulation § 1.471–11 is invalid because the full absorption method of accounting does not conform "as nearly as may be possible to the best accounting practices" in the furniture manufacturing trade

and because it is not the method which most clearly reflects income. The regulation is also sought to be invalidated based on plaintiff's allegation that the adjustment back to 1954 violates the three year statute of limitation set forth in I.R.C. § 6501. Because the Court is of the opinion that disputed questions of material fact exist going to the merits of the validity of the regulation compelling utilization of full cost absorption, the Court denies summary judgment on this issue. However, the Court does determine as a matter of law that the regulation is not invalid as in contravention of the three year statute of limitation set forth in I.R.C. § 6501(a).

The regulations themselves state that: Section 471 provides two tests to which each inventory must conform:

(1) It must conform as nearly as may be to the best accounting practice in the trade or business, and

(2) It must clearly reflect the income.

(b) It follows, therefore, that inventory rules cannot be uniform but must give effect to trade customs which come with in the scope of the best accounting practice in the particular trade or business. In order to clearly reflect income, the inventory practice of a taxpayer should be consistent from year to year, and greater weight is to be given to consistency than to any particular method of inventorying or basis of valuation so long as the method or basis used is in accord with §§ 1.471–1 through 1.471–11.

Treas.Reg. § 1.471–2(a) and (b). *See also, Wood v. Commissioner*, 197 F.2d 859, 860 (5th Cir. 1952). Clearly a determination of whether the full absorption method has the requisite conformity to best accounting practices is a question of fact which is subject to proof from expert witnesses in the accounting field. The Court will not resolve this disputed issue of fact upon reference to texts in the field of accounting as defendant would have this Court do.

Likewise, the question as to whether full cost absorption clearly reflects plaintiff's income or whether the previous method employed by plaintiff did not clearly reflect plaintiff's income is a hotly disputed ques-

tion of fact. The Ninth Circuit has observed that:

> The statute and regulations should not be interpreted so as to permit the taxing authority arbitrarily to impose its own preferred system of accounting upon taxpayers. If a taxpayer employs a method which is acceptable under accounting standards, even though some might say that it does not conform "as nearly as may be to the best accounting practice" (Int.Rev.Code of 1954 § 471), the taxpayer's choice of method should not be disturbed if it clearly reflects income. This is particularly so when a taxpayer has consistently applied his method, without the Commissioner's challenge, for a reasonable period of time.

*Photo-Sonics, Inc. v. Commissioner*, 357 F.2d 656, 658 n.2 (9th Cir. 1966). Such an inquiry is highly factual and requires expert testimony. Therefore summary judgment is not a proper vehicle to determine the issues relating to the regulation's validity under the accounting practice and clear-reflection of income standards.

■ However, the Court finds that the validity of the adjustment of income harking back to 1954 under the Regulations for I.R.C. § 481 and § 471 can be resolved as a matter of law and involves no disputed material facts. With the enactment of the 1954 Internal Revenue Code the adjustment provisions under I.R.C. § 481 were promulgated. These rules were made to solve the miasma in the courts over the calculation of adjustments to be made when a new method of accounting was adopted.[4] It has been held that:

> The principle intent on the part of Congress in enacting Section 481 was to ensure that after 1954 no item should escape taxation or be over-taxed or under-taxed at the time a taxpayer changes his

method of accounting or reporting income, regardless of who initiated the change. But we cannot overlook the clear expression in the statute of a secondary intent to excuse liability for taxes on pre-1954 amounts that become taxable solely by reason of Section 481 adjustments where (1) the *taxpayer* owed the amounts before 1954, and (2) the taxpayer *did not initiate the change*. The primary purpose is to prevent either inequitable taxation or windfalls from accruing to taxpayers.

*Grogan v. U.S.*, 475 F.2d 15, 21 (5th Cir. 1973) (emphasis in original) (footnote omitted). "Section 481 is designed to prevent a distortion of taxable income and a windfall to the taxpayer stemming from a change in accounting at a time when the statute of limitations bars reopening the taxpayer's returns for earlier years." *Graff Chevrolet Co. v. Campbell*, 343 F.2d 568, 573 (5th Cir. 1965). However, the Court notes that it has also been observed in regard to § 481 that:

> It must often be said of the Internal Revenue Code of 1954, that of all the good intentions with which the road to hell is paved, this represents the best. Certainly the intention of Section 481 to codify case law and administrative interpretation is a pavement block all its own.

Fletcher, *Section 481: Changes in Accounting Methods*, N.Y.U. 18th Inst. on Fed. Tax 161 (1960).

The issue raised by the alleged conflict between the three year statute of limitation in I.R.C. § 6501[5] and the adjustment provisions under § 481 was squarely addressed in *Graff Chevrolet Co. v. Campbell*, 343 F.2d 568 (5th Cir. 1965). In *Graff* the Court held that there was no conflict between the statute of limitation as to stale claims and the Commissioner's power to make adjustments due to change in accounting methods for

---

**4.** For a discussion of the statutory and decisional background of I.R.C. § 481, see *Commissioner v. Welch*, 345 F.2d 939 (5th Cir. 1965).

**5.** I.R.C. § 6501(a) states that:

(a) General rule.—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or

after the date prescribed), or if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

"[u]ntil the year of the accounting change, the Commissioner has no claim against the taxpayer for amounts which the taxpayer should have reported in prior years." 343 F.2d at 572. Since the claims for the adjustment under § 481 do not arise until the year of the accounting change, they are not stale claims barred by section 6501(a). Therefore the Fifth Circuit concluded that:

> The Commissioner has ample power to change accounting methods and reassess income for open years; section 481 would be virtually useless if it did not affect closed years. Considering the object of the section and its legislative history, we hold that a function of section 481 is to make the very type of adjustments in the year of change, here in issue, in order to prevent income from escaping tax "solely by reason of the change."

*Id.* (footnote omitted). *Accord, Weiss v. Commissioner,* 395 F.2d 500 (10th Cir. 1968) (Although the accumulation of inventory which is unreflected in the inventory value in the year of change occurred in years prior to the change, the adjustment is indirectly related to previous years and does not amount to income from years prior to the change and is not barred by section 6501). *See also, Dearborn Gage Co. v. Commissioner,* 48 T.C. 190, 200–01 (1967).

Two cases from other Circuits which the plaintiff urges in support of its position are not on point for these cases arose prior to the passage of the 1954 Code and the precedent set thereunder in *Graff* and *Weiss. Welp v. U. S.,* 201 F.2d 128 (8th Cir. 1953); *Commissioner v. Dwyer,* 203 F.2d 522 (2d Cir. 1953). The two Sixth Circuit cases relied upon by plaintiff, *Lincoln Electric Co. v. Commissioner,* 444 F.2d 491 (6th Cir. 1971); *Fruehauf Corporation v. Commissioner,* 356 F.2d 975 (6th Cir.), *cert. denied,* 385 U.S. 822, 87 S.Ct. 51, 17 L.Ed.2d 60 (1966) are likewise not applicable to this case. *Lincoln* did not even deal with an adjustment that affected closed years and in *Fruehauf* the Court noted that no statute of limitation argument was made by the parties on appeal. The Court rejects plaintiff's contention that *Lincoln* and *Fruehauf* imply on the part of the Sixth Circuit a disagreement with the holdings of cases squarely on point that section 6501 does not bar the adjustment made in the present case. Therefore, the Court holds that Treas.Reg. § 1.471–11 in conjunction with I.R.C. § 481 and Treas.Reg. § 1.481–3 is not an invalid regulation in conflict with the statute of limitation set forth in I.R.C. § 6501. Therefore the Court grants a partial motion for summary judgment to defendant as to the validity of the regulations in regard to section 6501.

The Court notes that the defendant has requested that the Court utilize the procedures under Fed.R.Civ.P. 56(d) to issue an order setting forth the material facts not in dispute and the material facts which remain disputed. However, this rule contains the caveat that such an undertaking is to be made "if practicable." In a tax case of this size and complexity and due to the fact there are no affidavits or other evidence before the Court, such a determination is not practicable at this time. Therefore the Court will exercise its discretion and decline the request to make such findings. *Powell v. Radkins,* 506 F.2d 763, 765 (5th Cir. 1975).

It is therefore, by the Court

ORDERED that the defendant's motion for partial summary judgment is granted as to the validity of the regulations in regard to I.R.C. § 6501 but is denied in all other respects.