COPY DATA, INC., PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 44846-86.          Filed July 18, 1988.

*Thomas C.C. Sargent,* for the petitioner.
*Nancy M. Vinocur,* for the respondent.

OPINION

COHEN, *Judge:* Respondent determined deficiencies of
$15,411, $1,115, and $1,789 in petitioner's Federal income
taxes for 1981, 1982, and 1983, respectively. After conces-
sions by petitioners, the sole issue for determination is
whether termination of petitioner's practice of deducting
"sales exposure expense" in relation to customer warranty
obligations was a change in method of accounting within
the meaning of section 481.[1]

All of the facts have been stipulated, and the stipulated
facts are incorporated in our findings by this reference.
Petitioner had its principal place of business in Milford,
Connecticut, at the time its petition was filed.

Petitioner was incorporated on November 30, 1973, and,
at all material times, engaged in the business of the sale
and service of photocopying equipment. Photocopy ma-
chines sold by petitioner were sold with a service warranty
agreement.

Petitioner reported its Federal income taxes on an accrual
basis. Petitioner maintained a reserve account, designated

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as
amended and in effect during the years in issue.

"accrued service exposure expense," with respect to its obligations to provide service to its customers under the warranty agreements. At the end of each fiscal year, the dollar total of retail sales subject to warranty was multiplied by 4 percent, and petitioner's accrued service exposure expense reserve account was adjusted upward or downward. Petitioner then combined the reserve adjustment with its actual service exposure expense for the year. The resulting figure was deducted as "sales exposure expense" on petitioner's tax return for the year.

The following table demonstrates the method by which petitioner arrived at its "sales exposure expense" for fiscal years ended September 30, 1979, through September 30, 1982:

|  | 9/30/79 | 9/30/80 | 9/30/81 | 9/30/82 |
|---|---|---|---|---|
| Retail sales | $518,468 | $611,903 | $760,544 | $717,251 |
| multiplied by 4 percent | × .04 | × .04 | × .04 | × .04 |
| Reserve account as of end of year | 20,738 | 24,476 | 30,421 | 28,690 |
| Less: Reserve account as of beginning of year | 23,043 | 20,738 | 24,476 | 30,422 |
| Increase (decrease) to reserve account | (2,304) | 3,378 | 5,945 | (1,732) |
| Actual service exposure expense | 5,366 | 7,869 | 7,315 | 5,052 |
| Sales exposure expense | 3,062 | 11,607 | 13,260 | 3,320 |

Petitioner concedes that its use of the accrued service exposure expense reserve was improper for tax reporting purposes. Accordingly, petitioner concedes that its sales exposure expense for the fiscal year ended September 30, 1981, must be decreased by $5,945, and that its sales exposure expense for the fiscal year ended September 30, 1982, must be increased by $1,732.

The parties agree that the sole remaining issue for consideration is whether the balance in the reserve account at the beginning of the fiscal year ended September 30, 1981, $24,476, must be taken into income by petitioner in that year. The answer depends on whether petitioner's discontinuance of its prior practice was a change in method of accounting for purposes of section 481.

Section 481(a) provides:

SEC. 481(a). GENERAL RULE.—In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change")—

(1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then

(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, * * *

Petitioner relies on *Schuster's Express, Inc. v. Commissioner,* 66 T.C. 588 (1976), affd. without published opinion 562 F.2d 39 (2d Cir. 1977).[2] Respondent relies on *Knight-Ridder Newspapers, Inc. v. United States,* 743 F.2d 781 (11th Cir. 1984). Petitioner claims that its prior practice with respect to sales exposure expense is not a method of accounting but merely resulted in improper deductions taken in years now barred by the statute of limitations.

In *Schuster's Express,* the taxpayer was a common carrier of freight and maintained its books and filed its Federal income tax returns under the accrual method of accounting. In connection with its operations, the taxpayer incurred expenses for insurance. It maintained its insurance expense accounts on the basis of a predetermined percentage of gross receipts and deducted on its tax returns the amount computed on an estimated basis. The difference between the amount so computed and actual cash disbursements for insurance was credited to an insurance reserve account. Because the critical difference between the parties in this case is whether or not *Schuster's Express* is

---

[2]Petitioner argues that *Schuster's Express, Inc. v. Commissioner,* 66 T.C. 588 (1976), is the law of the Second Circuit, to which this case is appealable, because it was affirmed by unpublished order at 562 F.2d 39 (2d Cir. 1977). That order stated:

"ON CONSIDERATION WHEREOF, it is now hereby ordered, adjudged and decreed that the decision of the Tax Court is *affirmed* on the opinion of the Tax Court * * * to the extent of the sole issue before us, i.e., the correctness of the Tax Court's holding that the Commissioner's disallowance of the taxpayer's deductions for the years 1966 and 1967 were barred by the statute of limitations. The Tax Court's holding was correct because the Commissioner did not sustain the burden, concededly resting upon him in the special circumstances of this case of showing that the adjustment sought by him was "necessary solely by reason of [a] change" in the taxpayer's method of accounting. I.R.C. sec. 481. [40 AFTR 2d 77-5293, 77-2 USTC par. 9495, (June 10, 1977).]"

Sec. 0.23 of the Rules of the United States Court of Appeals for the Second Circuit states:

"Where disposition is by summary order, the court may append a brief written statement to that order. Since these statements do not constitute formal opinions of the court and are unreported and not uniformly available to all parties, they shall not be cited or otherwise used in unrelated cases before this or any other court."

controlling, we quote at length and incorporate the analysis in that opinion. Preliminarily, we explained:

Section 481 does not define the phrase "change in method of accounting." The applicable regulations provide that a "change in method of accounting" includes a "change in the overall plan of accounting for gross income or deductions or a change in the treatment of any material item used in such overall plan." Sec. 1.446-1(e)(2)(ii), Income Tax Regs. Overall methods of accounting include the cash receipts and disbursements method, an accrual method, and combinations of such methods. Sec. 1.446-1(a)(1), Income Tax Regs. Petitioner, an accrual basis taxpayer, was not required by respondent to change its overall method but merely to change the manner of computing its insurance expense for the taxable year ended June 30, 1968. Thus, to come within the meaning of the phrase "change in method of accounting," there must have been a change in the treatment of a "material item."

"A material item is any item which involves the proper time for the inclusion of the item in income or the taking of a deduction." Sec. 1.446-1(e)(2)(ii)(a), Income Tax Regs. A "change in method of accounting does not include adjustment of any item of income or deduction which does not involve the proper time for the inclusion of the item of income or the taking of a deduction." Sec. 1.446-1(e)(2)(ii)(b), Income Tax Regs.
[66 T.C. at 595.]

## With respect to the specifics of Schuster's Express, we stated:

In the instant case we are concerned with a practice involving deductions based upon estimates which, like the practice in question in W.A. Holt Co. v. United States, supra, [368 F.2d 311 (5th Cir. 1966)] apparently fails to relate to the proper timing of the deduction.

* * * Respondent, the party on whom the burden of proof rests, has not established that under petitioner's method of computing insurance expense there was any procedure or intention to restore the excessive deductions to income in future years so as to properly reflect petitioner's total lifetime income. The deductions claimed for insurance expenses in excess of actual expenditures do not appear to properly belong in any taxable period. Thus, we do not have before us a case involving the proper time for the taking of a deduction. Under the regulations, a change in method of accounting does not include a change in the treatment of an item which does not involve the proper time for the inclusion of the item of income or the taking of a deduction. Sec. 1.446-1(e)(2)(ii)(b), Income Tax Regs.
[66 T.C. at 596-597.]

Returning to the rationale of the rule, we explained:

In addition, there is support for the proposition that section 481 is directed only at those accounting practices which do not avoid the reporting of income, i.e., those practices which properly reflect an item's effect upon a taxpayer's lifetime income. Their usual effect is merely to postpone the reporting of income. To this effect, the court in *Graff Chevrolet Co. v. Campbell,* 343 F.2d 568 (5th Cir. 1965), in holding that section 481 gives respondent the power to tax amounts that should have been reported in closed years, stated at page 572:

" 'When a taxpayer uses an accounting method which reflects an expense before it is proper to do so or which defers an item of income that should be reported currently, he has not succeeded (and does not purport to have succeeded) in permanently avoiding the reporting of any income; he has impliedly promised to report that income at a later date, when his accounting method, improper though it may be, would require it. Section 481, therefore, does not hold the taxpayer to any income which he has any reason to believe he has avoided, and does not frustrate the policy that men should be able, after a certain time, to be confident that past wrongs are set . at rest.' Note, Problems Arising from Changes in Tax-Accounting Methods, 73 Harv.L.Rev. 1564, 1576 (1960)."

See also *Peoples Bank & Trust Co. v. Commissioner,* 415 F.2d 1341, 1344 (7th Cir. 1969), affg. 50 T.C. 750 (1968). Under petitioner's method of computing its insurance expense deduction, its lifetime income would clearly have been distorted. Accordingly, based on the foregoing, we hold that respondent's change in the treatment of petitioner's insurance expense did not constitute a "change in method of accounting." Thus, the first condition of section 481 has not been met.

[66 T.C. at 597. Fn. ref. omitted. ]

In *Primo Pants Co. v. Commissioner,* 78 T.C. 705, 723 (1982), we stated:

We reached that result in *Schuster's Express* because that taxpayer's practice would never properly reflect the taxpayer's total lifetime income. The inquiry there, as here, was whether the accounting practices permanently avoided the reporting of income over the taxpayer's lifetime income or merely postponed the reporting of income. *Graff Chevrolet Co. v. Campbell,* 343 F.2d 568, 572 (5th Cir. 1965). * * *

By contrast, in *Knight-Ridder Newspapers, Inc. v. United States, supra,* the taxpayer's subsidiary was a newspaper that maintained its books and records on the accrual basis. In its advertising contracts, the newspaper provided that an advertiser would qualify for a lower per-line rate if its annual volume of advertising exceeded a specified level and would be entitled to a rebate of the excess amounts previously paid at the higher rate. The newspaper established a reserve on its books for anticipated advertising

rebates and each year added an amount based on an estimate of what the rebate liability would be for that year. Deductions were based on the amounts added to the reserve. Later, when rebates were paid, they were charged against, and served to reduce, the level of the reserve. The Court of Appeals stated:

In the case at bar, the Free Press's rebate reserve was an item which affected the timing of a deduction. There is no question that a deduction would be proper in the year that rebates were actually paid to advertisers. The reserve method merely accelerated the taking of that deduction to the time when the amounts were originally added to the reserve. The reserve did not determine whether or not a rebate would be deducted, but *when* that deduction would occur. [743 F.2d at 798.]

The Court of Appeals distinguished *Schuster's Express* and sustained the Commissioner's determination that the reserve was an accounting method within the meaning of section 481.

Petitioner argues that its reserve practice was arbitrary and that its actual expenses did not affect the reserve balance. Petitioner's argument erroneously focuses on the manner in which the reserve was computed, rather than the manner in which the deduction was determined. The stipulated table establishes that the deduction reflected actual expenses, even though those expenses were not reflected in the reserve account.

Petitioner determined its deduction for each year by combining the reserve adjustment with its actual service exposure expense for the year. There is no evidence as to how petitioner arrived at the 4 percent of retail sales figure as a "reserve requirement." We cannot, on the stipulated facts, determine whether the practice would or would not properly reflect the taxpayer's total lifetime income because there is no evidence of petitioner's lifetime warranty costs.

We can conclude, however, that the practice is unlike the deduction of estimated insurance expenses in *Schuster's Express* and is like the deduction based on reserve adjustment in *Knight-Ridder Newspapers*. The deduction here, and in *Knight-Ridder Newspapers*, was a composite of actual expenses and reserve adjustment and not an estimated amount of expense based on percentage of sales. Petitioner has not shown that respondent's determination was factu-

ally erroneous. Respondent's determination is consistent with the precedential cases. We conclude, therefore, that petitioner's practice was a method of accounting, which, when changed, required an adjustment under section 481 as determined by respondent.

*Decision will be entered for the respondent.*

