T.C. Memo. 1999-339

UNITED STATES TAX COURT

PELTON & GUNTHER, PROFESSIONAL CORPORATION, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23914-97.             Filed October 8, 1999.

Jon L. Brown, for petitioner.

<u>Margaret S. Rigg</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent determined an $81,679 income tax
deficiency for petitioner's tax year ended May 31, 1993, a $6,082

section 6651(a)(1)[1] addition to tax, and a $16,366 section 6662 penalty.

The issues for our consideration are: (1) Whether litigation costs paid by petitioner on behalf of clients and then reimbursed to petitioner are deductible as ordinary and necessary business expenses or whether such payments are in the nature of nondeductible advances or loans; (2) whether respondent's adjustment to petitioner's reporting of litigation costs triggers a section 481 adjustment; (3) whether petitioner's 1990 and 1991 net operating losses may be carried forward to the 1993 tax year, without first being applied to years prior to 1990 and 1991; and (4) whether petitioner is liable for an accuracy-related penalty under section 6662(a).[2] For convenience and continuity, separate fact findings and opinion portions are set forth for each issue decided by the Court.[3]

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year under consideration, and Rule references are to this Court's Rules of Practice and Procedure.

[2] Petitioner conceded at trial that if the Court determined that there was a deficiency, then it would be liable for the sec. 6651(a)(1) addition to tax for filing a delinquent return.

[3] The parties' stipulated facts and exhibits are incorporated by this reference.

I.  <u>Advanced Litigation Costs</u>

FINDINGS OF FACT

Petitioner Pelton & Gunther, P.C. (P&G), is a law firm operating as a professional corporation and had its principal place of business in San Mateo, California, at the time the petition was filed.  P&G's Federal income tax returns are filed for fiscal years ending May 31.  For the taxable years ended May 31, 1992 and 1993, P&G used the cash method of accounting for Federal income tax reporting.

P&G's legal specialty is the defense of personal injury automobile accident lawsuits.  More than 90 percent of P&G's services were performed pursuant to the request of the California State Automobile Association (CSAA).  At CSAA's request, P&G provided legal services for CSAA policyholders in connection with controversies arising from automobile accidents.  Under this arrangement, CSAA generally paid P&G $400 at the time P&G was asked to represent one of CSAA's policyholders.  P&G would pay various litigation costs including filing fees; deposition expenses; the costs of medical records; fees for witnesses, court reporters, and interpreters; and similar expenses as they would occur.  The litigation costs P&G paid on each case, more often than not, exceeded $400.

P&G would bill CSAA for its legal services and the litigation costs that it incurred on behalf of CSAA's

policyholders after the controversies were resolved and the cases were closed.  Cases were often open for more than 1 year.  Some bills from P&G to CSAA were for litigation costs only, some were for legal fees (services) only, and some were for both costs and fees.  P&G's fees were paid by CSAA at a stated hourly rate.  P&G claimed as a deduction litigation costs it paid on behalf of CSAA's policyholders, either from the $400 retainer or as advances, in the year that it paid the litigation costs.  P&G reported the $400 retainers and the reimbursements of litigation costs as income in the year they were received by P&G.

P&G's deductions for litigation costs were as follows:

| Fiscal year ending | Litigation costs |
|---|---|
| May 31, 1990 | $262,771.60 |
| May 31, 1991 | 280,332.39 |
| May 31, 1992 | 382,365.84 |
| May 31, 1993 | 358,092.07 |
| May 31, 1994 | 254,562.73 |

P&G reported retainers and reimbursed litigation costs as income as follows:

| Fiscal year ending | Retainers and reimbursed litigation costs |
|---|---|
| May 31, 1991 | $242,867.08 |
| May 31, 1992 | 361,880.37 |
| May 31, 1993 | 377,767.17 |
| May 31, 1994 | 276,686.05 |

Respondent, in the notice of deficiency, disallowed a portion of the total deduction petitioner claimed for litigation costs, reduced income by the amount of reimbursed previously

claimed deductions that P&G had included in its 1993 fiscal year, and made a section 481 adjustment that again caused the reimbursed prior year costs to be included in P&G's income for its 1993 fiscal year.  The section 481 adjustment had the effect of reversing respondent's adjustment backing out petitioner's inclusion of the prior year costs that were reimbursed during the 1993 fiscal year.

OPINION

Section 162 permits the deduction of ordinary and necessary expenses incurred in carrying on a trade or business.  P&G contends that the litigation costs it paid on behalf of clients were ordinary and necessary expenses of its law practice.  Respondent, on the other hand, contends that, in essence, the payments were in the nature of loans to P&G's clients because P&G paid the litigation costs with the understanding that it would be reimbursed by CSAA.

We agree with respondent.  On the basis of longstanding case precedents, P&G's payments or advances of the client's litigation costs should be treated like loans.  See Canelo v. Commissioner, 53 T.C. 217 (1969), affd. per curiam 447 F.2d 484 (9th Cir. 1971); see also Herrick v. Commissioner, 63 T.C. 562 (1975).  Canelo v. Commissioner, supra, involved a law firm which primarily engaged in plaintiffs' personal injury litigation on a contingent fee basis.  The firm advanced the clients' litigation

costs, and the clients were obligated to repay the advances only in the event of a favorable settlement or judgment. Accordingly, if nothing was recovered, the client would have no obligation. In Canelo, prospective clients were screened and were accepted only if there were good prospects for recovery. In holding that the advanced costs constituted loans and not deductible expenses, the Court emphasized that "If expenditures are made with the expectation of reimbursement, it follows that they are in the nature of loans, notwithstanding the absence of formal indebtedness." Id. at 225.

In this case, we note that the repayment of the advances was in no way contingent upon the outcome of the underlying litigation. P&G expected to be and was repaid for all costs advanced to CSAA's policyholders. "It has been firmly established that where a taxpayer makes expenditures under an agreement that he will be reimbursed therefor, such expenditures are in the nature of loans or advancements and are not deductible as business expenses." Patchen v. Commissioner, 27 T.C. 592, 600 (1956), affd. in part and revd. in part on other grounds 258 F.2d 544 (5th Cir. 1958).

Petitioner relies on Boccardo v. Commissioner, 56 F.3d 1016 (9th Cir. 1995), revg. T.C. Memo. 1993-224, in support of the contention that its advances on behalf of clients were ordinary and necessary expenses of the law practice. That case is

factually distinguishable because the <u>Boccardo</u> law firm received a flat percentage (gross fee arrangement) of the client's recovery.  The <u>Boccardo</u> law firm was entitled to the fee if the client recovered, but it was not entitled to reimbursement of the litigation costs "off the top" or before computing its percentage fee.  By contrast, a net fee arrangement would normally permit reimbursement of the costs before computing the percentage fee.  P&G's fee arrangement did not involve either a gross or net fee arrangement.  P&G's fee, which was paid by CSAA, was billed at a stated hourly rate, not on any form of contingency basis.  Therefore, payment of P&G's fees and reimbursement of litigation costs were on a dollar-for-dollar basis.  P&G's factual situation is clearly distinguishable from that of the law firm in <u>Boccardo</u>.  Ultimately, the litigation costs in this case were not a burden on P&G or a reduction of P&G's fee income received from CSAA for legal service rendered.

Petitioner advanced additional arguments with respect to the reimbursed expenses and litigation costs.  Petitioner argued that respondent is estopped from denying the deductibility of the litigation costs because petitioner relied on the contents of an Internal Revenue Service publication entitled "Business Expenses for 1988" (publication).  The publication contains the following statement, at 3:

> If you are a cash method taxpayer who pays an expense and then recovers any part of the amount paid in the same tax year, reduce your expense deduction by the amount of the recovery. If you have recovery in a later year, include the recovered amount in income.
> * * *

Petitioner's reliance on that publication is unwarranted because the excerpt relied upon assumes that the expenditure is deductible in the first instance. The material relied on by petitioner does not address the critical preliminary question of whether the costs advanced were loans or expenses. Reliance on the Commissioner's publication, in this instance, is misplaced because it does not contain guidance on the question of which costs, payments, or disbursements constitute a deductible expense.[4]

Respondent, in the notice of deficiency, disallowed petitioner's claimed deduction of litigation costs for 1993. Respondent also reversed petitioner's 1993 income inclusion attributable to reimbursement of litigation costs deducted in prior years (including 1992). Finally, respondent determined that section 481 applied, and so the reimbursement income

---

[4] Assuming arguendo that the publication was applicable to the question of whether or not advanced costs are deductible, the statement relied on by petitioner is the statement of a legal principle (i.e., Tax Benefit Rule). Because a necessary element for estoppel is that there be reliance on a factual statement, the circumstances here would not satisfy that necessary prerequisite. See Estate of Emerson v. Commissioner, 67 T.C. 612, 617-618 (1977).

reversed out by respondent was again included in 1993 income.  On brief, respondent contended that the section 481 adjustment was necessary "to correct the distortion caused by the double exclusion."  That is, petitioner deducted litigation costs for 1992 and, under respondent's deficiency notice approach reversing the reimbursement income, petitioner did not have to account for the 1993 reimbursement of the previously deducted items.

Section 481(a) provides that where taxable income from any year is computed under a method of accounting that is different from the method used for the preceding year, then the computation of the taxable income for the year of the change shall take into account those adjustments that are determined to be necessary solely by reason of the change in order to prevent duplications and/or omissions.  A section 481 change includes a change in the overall plan or method of accounting for income or deductions.  A section 481 change also includes a change in the treatment of any material item used in the overall plan.  See secs. 1.481-1(a)(1), 1.446-1(e)(2)(ii)(a), Income Tax Regs.  A material item is defined as "any item which involves the proper time for the inclusion of the item in income or the taking of a deduction." Sec. 1.446-1(e)(2)(ii)(a), Income Tax Regs.  A "change in method of accounting does not include adjustment of any item of income or deduction which does not involve the proper time for the inclusion of the item of income or the taking of a deduction."

Sec. 1.446-1(e)(2)(ii)(b), Income Tax Regs.; see also Copy Data, Inc. v. Commissioner, 91 T.C. 26, 30-31 (1988); Schuster's Express, Inc. v. Commissioner, 66 T.C. 588, 597 (1976), affd. without published opinion 562 F.2d 39 (2d Cir. 1977).

Here, petitioner claimed deductions for its clients' litigation costs, which petitioner expected would be reimbursed. The focus of respondent's adjustment addressed whether petitioner was entitled to deductions for those costs. Respondent did not change the method of accounting by which petitioner reported a particular item but instead determined that the item was not deductible, ab initio. The result of petitioner's deduction in one year and inclusion in another may appear like a timing question because it could result in increased deductions reducing petitioner's income in one year and petitioner's reporting as income any reimbursed deductions in a subsequent year. The essence of respondent's determination, however, was that petitioner's payments of litigation costs were loans to its clients, so the deductions were not allowable and the reimbursements were not includable in income.

Accordingly, section 481 is not applicable here, and respondent's attempt to obviate "the distortion caused by the double exclusion" must fail. Respondent's determination and position on brief does not mention tax benefit principles that might require petitioner to report, as income, the reimbursed

litigation costs during 1993.  By reversing petitioner's reporting of reimbursement income, respondent chose not to rely on tax benefit principles.  Respondent relied solely on section 481 to correct any improper prior year benefit and to cause the inclusion in income of the reimbursed costs.  Therefore, petitioner is not entitled to deduct the litigation costs for its 1993 taxable year, and no section 481 adjustment is appropriate for petitioner's 1993 tax year.[5]

Finally, we note that respondent did not include in the reversal of the reimbursements the aggregate of the $400 amounts CSAA advanced to petitioner upon the beginning of each case. Under petitioner's approach the $400 amounts were included as part of the reimbursement income reported.  On brief, respondent contended that petitioner had unrestricted use of the $400 amounts because they were first deposited in petitioner's general bank account and then transferred to a segregated account for payment of litigation costs.  Accordingly, respondent did not reverse the $400 amounts out of income or include them in the section 481 adjustment.  Petitioner, however, has not

---

[5] There is some question as to whether tax benefit principles apply where a deduction was improperly or erroneously taken (as it was in this case).  We note, however, that an appeal of this case would normally be to the Court of Appeals for the Ninth Circuit, where tax benefit principles have been held to apply concerning improper or erroneous deductions.  See Unvert v. Commissioner, 656 F.2d 483 (9th Cir. 1981), affg. 72 T.C. 807 (1979).

specifically alleged error or countered, on brief, respondent's position with respect to respondent's treatment of the $400 amounts. Accordingly, respondent's decision not to reverse the "$400 portion" of the reimbursement income is not in controversy, and there is no need to consider that aspect of the determination.

In addition to contesting the substance of respondent's determination, petitioner also contends that the amounts disallowed by respondent are unreasonable and inaccurate. The problem is generated by the fact that petitioner did not specifically account for litigation costs in reporting its income. Petitioner used a form of netting to arrive at the amount of the claimed deduction. Petitioner's approach is to treat receipts and expenses as part of a "revolving pool into which unsegregated receipts" were deposited and then used to pay expenses. Respondent determined that $129,815 of petitioner's $358,092 in claimed deductions was not allowable by concluding, in part, that reimbursements during the first 6 months of the next fiscal year (ended May 1994) represented litigation costs advanced by petitioner during the 1993 fiscal year. Petitioner argues that respondent ignored the revolving pool concept and, instead, calculated the disallowed portion of the deduction using an analysis of individual cases pending in petitioner's office.

Respondent explained that his agent used a statistical sampling technique to calculate the amount of the deduction to disallow for the 1993 tax year. The agent analyzed a sampling of cases to find the average time delay between expenditure and reimbursement by calculating the average length of time a sample case remained open. This was corroborated by reviewing the frequency of bank deposits and comparing specific deposits to a sampling of cases. By this type of methodology, respondent's agent estimated a 6-month period between expenditure and reimbursement.

Although respondent's determination involved estimates, it is reasonably accurate under the circumstances because of petitioner's failure to maintain records that would identify the amount of unreimbursed litigation costs for the fiscal year. In that regard, petitioner bears the burden of showing that respondent's determination is in error. Petitioner has not provided the Court with a method that is more reliable than respondent's. Petitioner's failure to keep or present respondent or the Court with adequate records showing the amounts involved is of its own doing, and, accordingly, petitioner must bear those consequences. See Silverton v. Commissioner, T.C. Memo. 1977-198, affd. without published opinion 647 F.2d 172 (9th Cir. 1981). Accordingly, we sustain respondent's determination as to

the amount and characterization of the nondeductible advanced litigation costs.

II. Net Operating Losses

FINDINGS OF FACT

P&G incurred a $3,382 net operating loss (NOL) for its 1990 fiscal year. For the 1991 fiscal year, P&G incurred a $277,478 NOL, and it did not carry either the 1990 or 1991 NOL back to prior fiscal years. In addition, no election was made waiving the NOL carryback with respect to prior years. On its Federal income tax returns for the years ended May 31, 1992 and 1993, P&G reported taxable income of $163,295 and $239,422, respectively, without considering the NOL deductions. P&G carried the 1990 and 1991 NOL's forward, applying them first to absorb fiscal year 1992 taxable income, and the NOL balance (deduction) was then carried forward and applied to the 1993 fiscal year.

P&G sent a letter to the Internal Revenue Service Center in Fresno, California, on August 14, 1990, containing the following statement/question:

> QUESTION TO IRS. We have a loss for the year 6/1/89 -- 5/31/90. Are we required to carry that loss back to previous years, requiring amendment of previous years' returns, or may we just carry the loss forward to future years and thus avoid the necessity of amending prior returns? Thank you for your assistance.

P&G did not receive a response.

Ultimately, respondent determined that the loss available for use against the 1993 income should be reduced by the amount of the loss which would have been absorbed if carried back to pre-1990 fiscal years.

OPINION

Taxpayers are permitted to carry net operating losses from one taxable year to another. See sec. 172(a). In general, taxpayers who sustain NOL's must first carry such losses back 3 years, and, if unabsorbed for the earlier years, then the losses may be carried forward, for as long as 15 years. See sec. 172(b)(1)(A) and (2). A taxpayer, however, may elect to relinquish the 3-year carryback period and simply carry a loss forward. See sec. 172(b)(3). To make this election, the statute expressly requires taxpayers to file an election relinquishing the carryback period by the return due date, including any extensions of time, for the taxable year in which the NOL was first incurred. Once made, the election is irrevocable. The statute directs the Secretary to prescribe the manner in which taxpayers shall make the election. See id.

The Secretary promulgated the following requirements for making the election:

> [The election] shall be made by a statement attached to the return (or amended return) for the taxable year. The statement required * * * shall indicate the section under which the election is being made and shall set forth information to identify the election, the period

for which it applies, and the taxpayer's basis or entitlement for making the election.

Sec. 301.9100-12T(d), Temporary Proced. & Admin. Regs., 57 Fed. Reg. 43896 (Sept. 23, 1992) (redesignating sec. 7.0, Temporary Income Tax Regs., 42 Fed. Reg. 1470 (Jan. 7, 1977)).

We have previously analyzed these statutory and regulatory requirements under section 172 in Young v. Commissioner, 83 T.C. 831 (1984), affd. 783 F.2d 1201 (5th Cir. 1986). In Young, it was held that in order substantially to comply with the election regulations, "as an absolute minimum, the taxpayer must exhibit in some manner, within the time prescribed by the statute, his unequivocal agreement to accept both the benefits and burdens of the tax treatment afforded by that section." Id. at 839.

P&G's August 14 letter falls far short of this minimum or threshold requirement. First, the letter to the service center was not attached to P&G's return as required by the regulation. Second, the letter does not manifest P&G's agreement or intention to make the election; it merely inquires whether such an election can be made. In that regard, most of the NOL's in question were incurred during 1991, the year after P&G sent the letter of inquiry to the service center. Under these circumstances, we cannot find that P&G has complied with the regulatory requirements, and we sustain respondent's determination that

P&G's NOL should be reduced by the amounts that would have been absorbed by the carryback of the losses to pre-loss years.[6]

III.  Accuracy-Related Penalty Under Section 6662

Respondent also determined that petitioner was negligent and liable for a penalty under section 6662(a) and (b)(1) for the year at issue.  Section 6662(a) and (b)(1) imposes an accuracy-related penalty equal to 20 percent of an underpayment that is attributable to negligence or disregard of rules or regulations.

Negligence has been defined as a "lack of due care or a failure to do what a reasonable person would do under the circumstances."  Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir. 1992), affg. T.C. Memo. 1991-179.  Respondent's determination of negligence is presumed correct, and petitioner bears the burden of showing that respondent's determination is erroneous.  See Rule 142(a).  Therefore, petitioner must prove that it was not negligent; i.e., that it made a reasonable attempt to comply with the provisions of the Internal Revenue Code and that it was not careless, reckless, or in intentional disregard of rules or regulations.  See sec. 6662(b) and (c).  We find that petitioner was negligent for deducting the advanced litigation costs as ordinary and necessary business expenses and

---

[6]  To the extent we have not addressed certain other arguments made by petitioner, we found them to be wholly without merit.

for disregarding the regulations concerning the treatment of NOL's.[7]

In deciding whether petitioner was negligent, we take into account the legal background and years of legal experience possessed by petitioner's owner(s). See Glenn v. Commissioner, T.C. Memo. 1995-399, affd. without published opinion 103 F.3d 129 (6th Cir. 1996). P&G and its officer(s) operated a law practice and should have realized that the advances were to be fully reimbursed and that they should have been treated as loans, not expenses, for Federal income tax purposes. Ample case precedents supporting our holding were extant at the time P&G claimed the deductions. In addition, petitioner has not demonstrated that it made a reasonable attempt to comply with the regulations concerning the election to carry forward NOL's. Under the circumstances here, we cannot agree with petitioner, which operates a law practice, that the inquiry made to respondent

---

[7] Respondent also determined that petitioner was liable for a sec. 6662(b)(2) penalty because its underpayment was substantial. As a result of our holding with respect to the negligence penalty, we need not address respondent's alternative penalty determination.

about the election was sufficient to avoid the penalty for negligence.  Accordingly, petitioner is liable for the section 6662(a) penalty.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>