T.C. Memo. 2020-44

UNITED STATES TAX COURT

GARY PINKSTON AND JANICE PINKSTON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11642-18.                    Filed April 13, 2020.

<u>John H. Dies</u>, <u>Steven T. Miller</u>, <u>Jefferson H. Read</u>, <u>John J. McGregor</u>, <u>Lisa</u>
<u>M. Mahlum</u>, <u>Matthew S. Reddington</u>, and <u>Matthew S. Spradling</u>, for petitioners.

<u>Nicholas R. Rosado</u> and <u>Michael Skeen</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  Currently before the Court is petitioners' motion for par-
tial summary judgment concerning their Federal income tax liability for 2012.
Petitioners in 2003 and 2010 acquired rental properties in Hawaii, upon which
they claimed depreciation deductions under the Modified Accelerated Cost Recov-

[*2] ery System (MACRS) established by section 168.[1] Upon examination of petitioners' 2012 return the Internal Revenue Service (IRS or respondent) adjusted these depreciation deductions downward. It did so by reallocating a larger portion of petitioners' cost basis to nondepreciable land (for the property purchased in 2003) and by reclassifying most of their cost basis into a MACRS class with a much longer recovery period (for the property purchased in 2010).

For purposes of the instant motion, petitioners do not challenge the correctness of these adjustments for the taxable year 2012. Rather, they challenge respondent's invocation of section 481 to "recapture" depreciation deductions that petitioners had claimed for years before 2012, as to which the limitations period on assessment appears to have expired. See sec. 6501. Of the adjustments determined in the notice of deficiency, $1,132,095 (or 67% of the total) arise from the section 481 adjustment.

Section 481 is captioned "Adjustments required by changes in method of accounting." Petitioners agree that this section applies regardless of whether an accounting method change is initiated by the taxpayer or the Commissioner, and

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code) in effect at the relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all dollar amounts to the nearest dollar.

**[*3]** they agree that section 481 can be invoked regardless of whether the limitations period for the relevant prior years has expired. But they contend that section 481 is inapplicable because respondent's adjustments to their reported depreciation do not constitute a "change in method of accounting" within the meaning of sections 446 and 481. Concluding as we do that respondent has the better side of this argument, we will deny petitioners' motion for partial summary judgment.

## Background

The following facts are derived from the parties' pleadings, motion papers, declarations, stipulation of facts, and the exhibits attached thereto. They are stated solely for purposes of deciding petitioners' motion for partial summary judgment and not as findings of fact in this case. See Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). Petitioners resided in California when they filed their petition.

During 2012 petitioners owned and rented two real estate properties in Hawaii. They purchased the first property--a beach house in Kahuku, Hawaii (beach house)--in September 2003 for $1.6 million. They purchased the second property--a condominium unit in Honolulu, Hawaii (condo unit)--in November 2010 for $2,692,900.

**[*4]**   Petitioners jointly filed a timely Form 1040, U.S. Individual Income Tax Return, for 2012.  On an attached Schedule E, Supplemental Income and Loss, they reported their rental real estate activity as consisting of the beach house (described as "single family residence") and the condo unit (described as "vacation/short-term rental").  Petitioners reported total rents received of $64,351 for the beach house and $99,200 for the condo unit.  They reported related expenses totaling $685,167, attributable mainly to depreciation.

For the beach house petitioners allocated $400,000 of their cost basis to land and the balance--$1,205,137 as of 2012--to land improvements.  They had used the same allocation to land on their Schedule E for every year since placing the property in service in 2003.  This allocation yielded a depreciation deduction of $43,819 for the beach house for 2012.

For the condo unit petitioners reported a total cost basis of $2,720,729.  As they had done for 2010 and 2011, they allocated $27,830 of their reported cost basis to land and the balance to the following MACRS classes of depreciable property, claiming depreciation for 2012 as shown below:

| Description | Class life | Deprec. basis | Depreciation |
|---|---|---|---|
| Distributive trade & servs. | 5 Years | $2,091,123 | $476,776 |
| Information systems | 5 Years | 4,345 | 991 |
| Residential rental prop. | 27.5 Years | 597,431 | 21,723 |
| Total | | 2,692,899 | 499,490 |

**[\*5]** Upon examination of petitioners' 2012 return the IRS significantly reduced

their reported depreciation deductions.  For the beach house the IRS increased the

allocation to nondepreciable land from $400,000 to $1,400,462, reducing the de-

preciation deduction from $43,819 to $7,443.  For the condo unit the IRS:  (1) de-

creased petitioners' cost basis by $27,829 (the amount of closing costs they had

classified as "land"); (2) determined an allocation to nondepreciable land of

$291,800; and (3) reallocated the bulk of petitioners' basis to nonresidential real

property, which is depreciated using a straight-line method over a 39-year recov-

ery period.  See sec. 168(b)(3)(A), (c), (e)(2)(B).  The IRS' basis reclassifications

for the condo unit are shown below:

| Asset class | Petitioners' allocation | IRS' allocation | Increase (decrease) |
|---|---|---|---|
| Land | 27,830 | 291,800 | 263,970 |
| 5-year property | 2,095,468 | 90,537 | (2,004,931) |
| Residential rental property | 597,431 | -0- | (597,431) |
| Nonresidential real prop. | -0- | 2,310,563 | 2,310,563 |
| Total | 2,720,729 | 2,692,900 | (27,829) |

These reclassifications led respondent to reduce petitioners' Schedule E depre-

ciation deduction for the condo unit from $499,490 to $79,887 for 2012.[2]

[2]With respect to the condo unit the IRS also applied a 10% haircut on allow-able depreciation expense because of petitioners' supposed personal use of the property.  The IRS has conceded that 10% haircut, and the figures in the text ex-clude the $7,989 of disallowed depreciation expense originally attributable to it.

**[\*6]**  The IRS further concluded that its basis reallocations for depreciation pur-poses constituted a change in petitioners' method of accounting.  It therefore in-voked section 481 and determined additional adjustments to income for 2012 equal to the difference between the amounts of depreciation petitioners had pre-viously claimed on the two rental properties and the amounts that the IRS would have allowed consistent with its reallocations for 2012.[3]

Respondent issued petitioners a timely notice of deficiency, and they timely petitioned this Court.  On July 19, 2019, petitioners filed a motion for partial sum-mary judgment addressed solely to the section 481 adjustment.  Respondent filed an objection to that motion on September 23, 2019.

Discussion

A.    Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law.  Rule 121(b); Sundstrand Corp., 98 T.C. at 520.  In deciding whether to

---

[3]The notice of deficiency determined additional income of $1,132,095 from depreciation recapture.  The IRS now agrees that this figure should be reduced to $1,121,536 owing to the concession noted supra note 2.

**[*7]** grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party (here, respondent). Sundstrand Corp., 98 T.C. at 520. However, the nonmoving party may not rest upon mere allegations or denials of his pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); see Sundstrand Corp., 98 T.C. at 520.

The sole question currently before the Court is whether respondent initiated a change in petitioners' method of accounting in a manner that permits him to make an adjustment under section 481. Respondent does not allege any dispute of material fact affecting this question.

B.     Governing Legal Principles

　　1.     Purpose and Operation of Section 481

Section 446(a) provides that taxable income shall generally be computed "under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." Section 446(b) grants the Commissioner discretion to change a taxpayer's accounting method in certain circumstances. It provides that, if the method of accounting used by the taxpayer "does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income." Sec. 446(b).

**[*8]** Section 446(e), conversely, permits the taxpayer to change his own accounting method but only if he first secures the Commissioner's consent to such change.

Neither of these provisions authorizes retroactive adjustments to a taxpayer's liability for a year preceding the year of change. And the period of limitations may prevent the Commissioner from examining prior years to make adjustments that are a logical corollary of an accounting method change for the current year. See sec. 6501. "The purpose of § 481 is to prevent either a distortion of taxable income or a windfall to the taxpayer arising from a change in accounting method when the statute of limitations bars reopening of the taxpayer's earlier returns." Suzy's Zoo v. Commissioner, 273 F.3d 875, 883 (9th Cir. 2001), aff'g 114 T.C. 1 (2000).

Section 481, captioned "Adjustments required by changes in method of accounting," was enacted as part of the 1954 Code. It applies in situations where a taxpayer's income for a particular year (the "year of change") is computed "under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed." In that event section 481(a)(2) provides that "there shall be taken into account those adjustments

**[*9]** which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted."

Section 481 leaves many questions unanswered, and it has been described as an example of "codified confusion." Grogan v. United States, 475 F.2d 15, 16 (5th Cir. 1973) (quoting William H. Fletcher, "Section 481: Changes in Accounting methods", N.Y.U. 18th Inst. on Fed. Tax 161 (1960)). Yet the courts have interpreted it fairly consistently during the 65 years since its enactment. They have uniformly agreed that section 481 "authorizes the * * * [Commissioner] to adjust the amount of tax due in the year a taxpayer changes its method of accounting, whether [the change is] initiated by the taxpayer or the * * * [Commissioner]." Suzy's Zoo, 273 F.3d at 883. And because this statute "would be virtually useless if it did not affect closed years," courts have uniformly interpreted it to allow adjustments, in the year of change, to reflect adjustments to tax liabilities for years closed by the period of limitations. Graff Chevrolet Co. v. Campbell, 343 F.2d 568, 572 (5th Cir. 1965); see Suzy's Zoo, 273 F.3d at 884; Rankin v. Commissioner, 138 F.3d 1286, 1288 (9th Cir. 1998), aff'g T.C. Memo.

**[*10]** 1996-350; <u>Huffman v. Commissioner</u>, 126 T.C. 322, 341 (2006), <u>aff'd</u>, 518 F.3d 357 (6th Cir. 2008).[4]

Section 481 "is not meant to provide a means to correct errors of past years." <u>German v. Commissioner</u>, T.C. Memo. 1993-59, 65 T.C.M (CCH) 1931, 1937, <u>aff'd</u>, 46 F.3d 1141 (9th Cir. 1995). Rather, it is intended to take into account in the year of change--here, 2012--those adjustments that are necessary solely by reason of that change in order to prevent amounts from being duplicated or omitted. <u>Ibid.</u> In this case petitioners took large depreciation deductions during 2003-2011 using the depreciation methods reflected on their returns. If respondent's adjustments are sustained, petitioners will continue to take depreciation deductions, possibly for many years, using different depreciation methods as set forth by respondent. This is a typical situation in which a change in accounting method may cause duplication of deductions or omission of income.

Because section 481 might be said to deny taxpayers the repose otherwise granted by the period of limitations, we examine carefully each instance in which

---

[4]Nor is the Commissioner's authority to make section 481 adjustments limited by any "duty of consistency." <u>See</u> <u>Wasco Real Props. I, LLC v. Commissioner</u>, T.C. Memo. 2016-224, 112 T.C.M. (CCH) 640, 651 (declining "to let the judicially established doctrine of a duty of consistency defeat th[e] legislative act" embodied in section 481), <u>aff'd</u>, 744 F. App'x 534 (9th Cir. 2018); <u>see also</u> <u>German v. Commissioner</u>, T.C. Memo. 1993-59, <u>aff'd</u>, 46 F.3d 1141 (9th Cir. 1995).

**[*11]** the Commissioner invokes section 481.  As a threshold matter, we have placed a premium on distinguishing between a change in accounting method and mere "correction of errors," which do not implicate section 481.  See Huffman, 126 T.C. at 341-342.  If a change in accounting method has occurred, we must also ensure that any section 481 adjustment is made to compensate only for that change.  Rankin, 138 F.3d at 1288.

2.    Changes in Accounting Method

"A change in method of accounting to which section 481 applies includes a change in the over-all method of accounting for gross income or deductions, or a change in the treatment of a material item."  Sec. 1.481-1(a)(1), Income Tax Regs.  Section 481 was designed "to complement section 446."  German, 65 T.C.M. (CCH) at 1937.  The regulations accordingly cross-refer to section 446(e) and the regulations under it "[f]or rules relating to changes in method of accounting."  Sec. 1.481-1(a)(1), Income Tax Regs. (cross-referring to sec. 1.446-1(e), Income Tax Regs.).

A change in method of accounting includes not only a change in the tax-payer's overall plan of accounting but also "a change in the treatment of any material item used in such overall plan."  Sec. 1.446-1(e)(2)(ii)(a), Income Tax Regs.  "[A] method of accounting may exist under this definition without the

**[\*12]** necessity of a pattern of consistent treatment." Ibid. But "in most instances a method of accounting is not established for an item without such consistent treatment." Ibid. "This Court and other courts have generally agreed that an erroneous treatment rises to the level of a 'method of accounting' only if it is employed consistently for two or more years." Thrasys, Inc. v. Commissioner, T.C. Memo. 2018-199, at \*12-\*13.

A material item is "any item that involves the proper time for the inclusion of the item in income or the taking of a deduction." Sec. 1.446-1(e)(2)(ii)(a), Income Tax Regs. An item is "material," in order words, if it concerns when, as opposed to whether, taxable income is affected. See Primo Pants Co. v. Commissioner, 78 T.C. 705, 722 (1982) (noting that materiality "turns on whether the items affect timing"). When an accounting practice "postpones the reporting of income, rather than permanently avoiding the reporting of income over the taxpayer's lifetime, it involves the proper time for reporting income." Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. 500, 510 (1989); see Rankin, 138 F.3d at 1288 (noting that an item is "material" when it affects the timing of reporting income or deductions, as opposed to "how much income is reported, or whether a deduction would ever have been appropriate").

**[\*13]** "A change in method of accounting does not include correction of mathematical or posting errors, or errors in the computation of tax liability." Sec. 1.446-1(e)(2)(ii)(b), Income Tax Regs. "A change in the method of accounting also does not include a change in treatment resulting from a change in underlying facts." Ibid. The regulations include detailed rules for determining whether changes involving depreciable assets constitute changes in method of accounting. See id. subdiv. (ii)(d).

C.      Analysis

Upon examination of petitioners' 2012 return the IRS made two sets of changes regarding the real estate assets shown on their Schedule E. For the beach house the IRS increased the allocation of petitioners' cost basis from depreciable property to nondepreciable land by more than $1 million. See sec. 1.167(a)-2, Income Tax Regs. (stating that the allowance for depreciation "does not apply * * * to land apart from the improvements or physical development added to it"). For the condo unit the IRS increased the allocation from depreciable property to nondepreciable land to $291,800, and it reallocated $2.3 million of building components from property depreciable over a 5-year period to property depreciable over a 39-year period.

**[\*14]** 1.     <u>Materiality Under General Principles</u>

Both sets of adjustments to petitioners' depreciation methods involve "material items" under the general principles of the regulations.  The result of re-allocating the condo unit's basis to different MACRS classes is to spread peti-tioners' depreciation deductions over a 39-year period instead of a 5-year period.  This "involves the proper time for * * * the taking of a deduction."  Sec. 1.446-1(e)(2)(ii)(<u>a</u>), Income Tax Regs.

The same result follows for the reallocation of basis from depreciable prop-erty to nondepreciable land.  Under petitioners' reporting they would claim large annual depreciation deductions on the beach house, reducing their basis to $400,000 when fully depreciated, then realize (absent a decline in property values) a large gain upon its ultimate sale.  Under the IRS' reallocation of basis, petition-ers would be entitled to much smaller annual depreciation deductions on the beach house, reducing their basis to $1,400,462 when fully depreciated, then realize a much smaller gain upon its ultimate sale.

Petitioners' accounting treatment thus involves both the proper time for tak-ing deductions and the proper time for reporting income.  The latter is true because petitioners' treatment "postpones the reporting of income, rather than permanently avoiding the reporting of income over the taxpayer's lifetime."  <u>See</u> <u>Wayne Bolt &</u>

[*15] Nut Co., 93 T.C. at 510; see also sec. 1.446-1(e)(2)(ii)(a), Income Tax Regs. By changing petitioners' treatment, the IRS has not altered their lifetime ability to recover the full cost of the beach house; it has changed the timing of when (and how) that cost recovery will occur.[5]

Petitioners urge that respondent's adjustments do not give rise to a change in accounting method because they involve "characterization" of the rental proper-ties. See Coulter Elecs., Inc. v. Commissioner, T.C. Memo. 1990-186, 59 T.C.M. (CCH) 350, 364 (distinguishing between "a question of timing contemplated by section 446" and "a question of characterization"), aff'd, 943 F.2d 1318 (11th Cir. 1991). In some situations the IRS' recharacterization of an item may determine whether the item is taxable or deductible. See, e.g., Underhill v. Commissioner, 45 T.C. 489, 496 (1966) ("The issue before us is the extent to which payments received by * * * [the taxpayer] are taxable or nontaxable--i.e., the character of the

---

[5]In determining whether an item postpones or accelerates the reporting of income, courts have generally assumed that relevant future events (such as sale of the property) will ultimately occur. See, e.g., Knight-Ridder Newspapers, Inc. v. United States, 743 F.2d 781, 799 (11th Cir. 1984) (assuming that a reserve would eventually be liquidated when the taxpayer "closes out its business" or "when the reserve is abandoned at the Day of Armageddon"); Pac. Enters. & Subs. v. Commissioner, 101 T.C. 1, 17 (1993); Primo Pants Co. v. Commissioner, 78 T.C. 705, 723 (1982) (concluding that a consistent undervaluation of inventory "acts [only] to defer income" because the deferral will eventually end "whenever the closing inventory is correctly valued").

**[\*16]** payment[.]"); <u>Pelton & Gunther, Prof'l Corp. v. Commissioner</u>, T.C. Memo. 1999-339, 78 T.C.M. (CCH) 578, 581 (finding no change in accounting method where IRS recharacterized deductible litigation costs as nondeductible loans). Changes that affect whether, as opposed to when, an item is includible in (or deductible from) gross income generally do not implicate changes of accounting method.

Here, it is far from clear that respondent's basis reallocations are aptly described as involving "characterization" of petitioners' real estate. But even if they do, it would not matter. Because the IRS has initiated changes only in the <u>timing</u> of petitioners' cost recovery, it makes no difference whether the changes coincide with or result from a change in character.

For example, in <u>Sunoco, Inc. & Subs. v. Commissioner</u>, T.C. Memo. 2004-29, 87 T.C.M. (CCH) 937, the question was whether an item should be characterized as an immediate offset to cost of goods sold or as an asset amortizable over five years. We held that this was a "material item" for purposes of section 446(e) because it "entail[ed] a change in the timing of the income reported * * * and not a change in the total income realized over the life of the * * * [property]." <u>Id.</u> at 947-948. The fact that the adjustment involved characterization, in other words, was irrelevant so long as it related to timing. The same conclusion follows here.

**[*17]** 2.　　Materiality Under Depreciation Rules

The regulatory provisions that specifically govern "changes involving depreciable or amortizable assets" point to the same conclusion.  See sec. 1.446-1(e)(2)(ii)(d), Income Tax Regs.  This paragraph applies (among other things) "to property subject to section * * * 168."  Id. subdiv. (ii)(d)(1).  It provides that "a change in the treatment of an asset from nondepreciable * * * to depreciable * * *, or vice versa, is a change in method of accounting."  Id. subdiv. (ii)(d)(2).  It also sets forth the general rule that "[a] change in the depreciation or amortization method, period of recovery, or convention of a depreciable or amortizable asset" constitutes a change in accounting method.  Id. subdiv. (ii)(d)(2)(i).  All of the adjustments the IRS proposed in this case are described in this paragraph.

The general rules set forth above apply "[e]xcept as provided in paragraph (e)(2)(ii)(d)(3) of this section."  Id. subdiv. (ii)(d)(2).  That subdivision provides, in limited circumstances, that "[a]n adjustment in the useful life of a depreciable or amortizable asset * * * is not a change in method of accounting."  Id. subdiv. (ii)(d)(3)(i).  But this "useful life" exception applies only in the case of assets "for which depreciation is determined under section 167 (other than under section 168 * * *)."  Ibid. (emphasis added).  The "useful life" exception is expressly made inapplicable if a taxpayer is changing to or from "a recovery period * * * that is

[*18] specifically assigned by the Internal Revenue Code (for example, * * * section 168(c) * * *)." Ibid. The 5-year, 27.5-year, and 39-year recovery periods at issue with respect to the condo unit are specifically assigned by section 168(c).

An example to the regulations confirms that reallocations of basis to MACRS classes with different recovery periods are changes in method of accounting that generate a section 481 adjustment. Example (9) posits a taxpayer that originally classified a $10 million manufacturing facility as nonresidential real property under section 168(e), subject to a 39-year recovery period. Sec. 1.446-1(e)(2)(iii), Example (9), Income Tax Regs. The taxpayer subsequently reallocates $1.5 million of its basis to section 1245 property and depreciates it as 5-year property under section 168(e). Example (9) concludes:

> Pursuant to paragraph (e)(2)(ii)(d)(2)(i) of this section, * * * [the taxpayer's] change to this depreciation method, recovery period, and convention is a change in method of accounting. This method results in a section 481 adjustment. The useful life exception under paragraph (e)(2)(ii)(d)(3)(i) of this section does not apply because the assets are depreciated under section 168.

The regulatory provisions discussed above were promulgated to resolve a disagreement among the courts concerning application of the "useful life" exception. Compare Kurzet v. Commissioner, 222 F.3d 830 (10th Cir. 2000), aff'g in part, rev'g in part T.C. Memo. 1997-54, with Commissioner v. Brookshire Bros.

[*19] Hldg., Inc., 320 F.3d 507 (5th Cir 2003), aff'g T.C. Memo. 2001-150, and

O'Shaughnessy v. Commissioner, 332 F.3d 1125 (8th Cir. 2003). The "useful

life" exception had been in the regulations since 1970. See T.D. 7073, 1970-2

C.B. 98. Uncertainty arose as to how that exception applied to "recovery periods"

created by the MACRS system in 1986. The Department of the Treasury acted to

resolve that uncertainty by issuing temporary and proposed regulations in 2004.

See T.D. 9105, 2004-1 C.B. 419, 420. Those regulations were finalized in 2007.

See T.D. 9307, 2007-7 I.R.B. 470. The provisions of paragraph (e)(2)(ii)(d), as

well as Example (9), apply with respect to "depreciable or amortizable asset[s]

placed in service by the taxpayer in a taxable year ending on or after December 30,

2003." See sec. 1.446-1(e)(4)(ii), Income Tax Regs.

Petitioners placed the beach house in service during 2003 and the condo

unit in service during 2010, i.e., in taxable years "ending on or after December 30,

2003." And petitioners depreciated both properties under the MACRS system

established by section 168. The regulatory provisions discussed above, as illus-

trated by Example (9), thus apply with full force to them. Respondent's adjust-

ments to the depreciable bases and MACRS recovery periods for these assets

accordingly constitute "changes in method of accounting" that generate a section

481 adjustment. See sec. 1.446-1(e)(2)(ii)(d)(5)(iii), Income Tax Regs. (providing

[*20] that a section 481 adjustment is required for "a change from an impermissible method of computing depreciation * * * to a permissible method" and for "a change in the treatment of an asset from nondepreciable * * * to depreciable * * * (or vice versa)").[6]

### 3.    Other Requirements

Respondent's adjustments to petitioners' depreciation methods satisfy the other requirements for a change in method of accounting. In most cases a "method of accounting" does not exist without "a pattern of consistent treatment." Id. subdiv. (ii)(a). The courts generally agree that a treatment meets this standard "if it is employed consistently for two or more years." Thrasys, Inc., at *12-*13. On their tax returns petitioners employed their depreciation method for the beach house consistently for 10 years, and they employed their depreciation method for the condo unit consistently for 3 years. At no time did they employ any different

---

[6]Petitioners err in suggesting that they are outside the scope of the current regulations because their real estate assets are "section 167 property." "Section 168 determines the depreciation allowance for tangible property that is of a character subject to the allowance for depreciation provided in section 167(a) and that is placed in service after December 31, 1986." Sec. 1.168(a)-1(a), Income Tax Regs. Petitioners placed both properties in service after December 31, 1986, and they concede that they depreciated both properties using the MACRS system established by section 168.

**[\*21]** depreciation method for either property. We conclude that both methods displayed the consistency required for a "method of accounting."

"A change in method of accounting does not include correction of mathematical or posting errors." Sec. 1.446-1(e)(2)(ii)(b), Income Tax Regs. We have interpreted "mathematical error" to mean "an error in arithmetic; i.e., an error in addition, subtraction, multiplication, or division." Huffman, 126 T.C. at 344. We have interpreted the term "posting error" to mean an error in "the act of transferring an original entry to a ledger." Wayne Nut & Bolt Co., 93 T.C. at 510-511 (quoting Black's Law Dictionary 1050 (5th ed. 1979)); see Huffman, 126 T.C. at 343. Petitioners committed no "posting errors," and respondent's adjustments to their depreciation methods entailed substantive reclassifications of property components, not correction of mistakes in arithmetic. Neither of these exceptions applies here. Cf. Huffman, 126 T.C. at 355 (ruling that omission of a computational step in valuing an inventory pool was not a "mathematical or posting error").

Finally, petitioners urge that respondent has not changed their method of accounting but has simply implemented "a change in treatment resulting from a change in underlying facts." Sec. 1.446-1(e)(2)(ii)(b), Income Tax Regs. This exception covers situations where a taxpayer alters his accounting treatment

[*22] because the facts on the ground have changed in a way that permits or requires a different treatment. See Thrasys, Inc., at *18. This would be true, for example, where an employer changed its accounting for vacation pay after shifting from a nonvested to a fully vested vacation pay plan. See sec. 1.446-1(e)(2)(iii), Example (3), Income Tax Regs. And it would be true if a taxpayer began claiming depreciation on real property after converting the property from personal use to rental use. Cf. Hopkins Partners v. Commissioner, T.C. Memo. 2009-107, 97 T.C.M. (CCH) 1560, 1567-1568 (finding a "change in underlying facts" where landlord changed his accounting treatment to reflect revisions to his lease with the lessee).

Petitioners have pointed to no "change in underlying facts" involving their Hawaii rental properties. As far as the record shows, the relevant facts concerning those properties have not changed since petitioners acquired them. Respondent has determined to adjust petitioners' depreciation methods, not because any facts on the ground have changed, but because petitioners misclassified components of those properties for MACRS depreciation purposes. Petitioners may have misunderstood the rules governing MACRS depreciation as applied to the Hawaii real estate. But a subjective misunderstanding of fact or law does not equate to "a change in underlying facts" within the meaning of section 1.446-1(e)(2)(ii)(b),

[*23] Income Tax Regs.  Cf. FPL Grp., Inc. v. Commissioner, 115 T.C. 554, 575 (2000) (finding that a change in classification of an item from expense to capital expenditure did "not result from * * * a change in underlying facts").

In sum, we conclude that respondent's adjustments to petitioners' depreciation methods constitute a "change in method of accounting" that results in a section 481 adjustment.  We will therefore deny petitioners' motion for partial summary judgment.  We leave all other questions to be decided by further proceedings in this case.

To implement the foregoing,

An appropriate order will be issued.